185 Cal.App.3d 1346 (1986)
230 Cal. Rptr. 358
THE PEOPLE, Plaintiff and Respondent,
v.
DEBORAH K. LIONBERGER et al., Defendants and Appellants.
Docket Nos. 2137, 2138.
Court of Appeals of California, Appellate Department, Superior Court, Ventura.
July 29, 1986.
COUNSEL
Dennis A. Fischer for Defendants and Appellants.
Michael D. Bradbury, District Attorney, and Dennis I. Floyd, Deputy District Attorney, for Plaintiff and Respondent.
OPINION
STEELE, P.J.
Misdemeanor complaints were filed in the municipal court respectively naming, as defendants, Dick Otto Weisse, case number MM68376, Sharyl Ann Weisse, case number MM68377, and Deborah K. Lionberger, case number MM68378, following the arrests of each on May 31, 1985, for violation of Health and Safety Code section 11550, subdivision (a) (illegal use of controlled substance). The defendants were arraigned and entered pleas of not guilty on June 28, 1985. On August 2, 1985, a motion was heard to suppress evidence pursuant to Penal Code section 1538.5. The defendants jointly challenged the constitutional propriety under the Fourth Amendment standards of their detention and subsequent arrest by the sheriff's deputy who stopped the automobile driven by the defendant, Dick Weisse, in which the defendants, Sharyl Weisse and Deborah Lionberger, Page Supp. 3 were passengers, and made observations upon which the instant prosecution is based. At the conclusion of the hearing, and following the taking of evidence and argument, the trial court granted the suppression motion as to the defendant, Dick Weisse, and denied the motions as to the defendants, Sharyl Weisse and Deborah Lionberger, principally because they lacked standing to assert a similar constitutional basis for the motion. Thereafter, upon appropriate application by these appellants, this court stayed further proceedings in the lower court pending final determination of this appeal.
(1) The issue presented is the standing of a vehicle's passengers to seek suppression on Fourth Amendment grounds of police observations and other evidence obtained as the result of an unlawful seizure. More precisely, the question is: In light of the trial court's finding that the stopping of the vehicle driven by Dick Weisse "was not supported by probable cause," did the court erroneously deny the suppression motion of appellants Sharyl Ann Weisse and Deborah Lionberger because they "lacked standing to assert the violation of the driver's Fourth Amendment rights" under Rakas v. Illinois (1978) 439 U.S. 128 [58 L.Ed.2d 387, 99 S.Ct. 421]?
The question must be answered in the affirmative. We conclude that the trial court erred in its application of Rakas.
At 1:15 on the morning of May 31, 1985, the arresting officer was on traffic patrol in the City of Camarillo when he observed the three defendants enter a car parked in the Paseo Camarillo Shopping Center. He did not see where the defendants had come from, but assumed that it was from Josephina's, one of two restaurants in the vicinity with bars. The automobile was then driven by Mr. Weisse to the exit of the parking lot where it stopped at a stop sign for 15 or 20 seconds and then made a left turn onto Lantana Avenue without signaling. Although the officer admitted that the stop was proper, he found the 15- to 20-second pause suspicious. Other than that, and the failure to signal before turning, he observed nothing unusual.
The officer then followed the vehicle for at least three quarters of a mile before stopping it. The basis for the stop was a combination of the vehicle's failure to signal when leaving the parking lot, the "unusually long stop," the lateness of the hour, the fact that there were two bars in the vicinity, and that the driver could "possibly" be drunk. It should be noted that during the time in which the officer followed the vehicle, it did nothing further to arouse the officer's suspicious.
Upon being stopped, the driver exited the vehicle and produced his driver's license. The officer smelled alcohol and shined the light in the driver's eyes. Page Supp. 4 The driver acknowledged that he had been drinking. There is some confusion as to whether a field sobriety test was given. The officer then directed the driver to step onto the sidewalk and went to investigate the vehicle, alleging fear for his safety.
Mrs. Weisse was in the front passenger seat and Mrs. Lionberger was in the rear. The officer shined his flashlight around the car in search of weapons and alcohol and found neither. He then decided to look into the eyes of the passengers. He tried, but was unsuccessful. He was, however, determined to do so. As he stated regarding Mrs. Lionberger, "If she would have never looked, I probably would have went on and tried later. I would have looked there all night trying to look at her face." He went on to say that if they tried to walk away, he would have followed them "not to stop them, just walk up to them and look in their face." The officer finally determined that the passengers each had dilated pupils and the arrest followed.
The appellants contend that the trial court erred in concluding that the appellants lacked standing to challenge the unlawful stop of the automobile in which they were passengers, because they had a legitimate expectation of privacy, under the Fourth Amendment, to travel free of any unreasonable government intrusion. The trial court relied on Rakas v. Illinois, supra, 439 U.S. 128, for its finding that the appellants had no standing to assert the motion to suppress. We find, however, that Rakas does not stand for that. Rakas, rather, sets forth the principle that Fourth Amendment rights are personal rights that may not be asserted vicariously. Justice Rehnquist noted, "For we are not at all sure that the determination of a motion to suppress is materially aided by labeling the inquiry identified in Jones as one of standing, rather than simply recognizing it as one involving the substantive question of whether or not the proponent of the motion to suppress has had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge." (Id., at p. 133, italics added.) One year later, in United States v. Salvucci (1980) 448 U.S. 83 [65 L.Ed.2d 619, 100 S.Ct. 2547], Justice Rehnquist, again writing for the court, in footnote 4 at page 87 [65 L.Ed.2d at page 625] said, "In Rakas, this Court discarded reliance on concepts of `standing' in determining whether a defendant is entitled to claim the protections of the exclusionary rule. The inquiry, after Rakas, is simply whether the defendant's rights were violated by the allegedly illegal search or seizure."
We must then decide whether these appellants' Fourth Amendment rights have been violated. No California authority has been provided to us. There have been, however, several cases from other jurisdictions. Page Supp. 5
In People v. Kunath (1981) 99 Ill. App.3d 201 [425 N.E.2d 486], the Appellate Court of Illinois said on page 489, "Regardless of whether defendant had a legitimate expectation of privacy in the contents of the automobile so as to challenge successfully the search thereof, as a passenger he can challenge the stopping of the vehicle since his personal liberty and freedom were intruded upon by that act. [Citations] The Fourth and Fourteenth Amendments of the U.S. Constitution forbid unreasonable searches and seizures, and it is clear that stopping an automobile and detaining its occupants constitutes a "seizure" of those persons [Citations]. And, for the evidence seized as a result of that stop to be admissible, the stop must not have been unreasonable." (Italics in original.) The Supreme Court of Rhode Island in State v. DeMasi (R.I. 1980) 419 A.2d 285, wrote on page 294, "On the facts before us, we believe that although the investigatory stop may have focused primarily on Lanoue as the operator of the vehicle, the officers effectively inhibited the free movement of all three individuals in the car to an equivalent extent. Furthermore, at the time Officer Zwolenski requested the documents from Lanoue, he also asked for identification from the two passengers. And the fact that the officers took the names of all three for the NCIC warrant check can leave but little doubt that each was being personally detained. We conclude that while traveling in the Mercury, all three shared a legitimate expectation that they would be free from the unreasonable governmental intrusion occasioned by the stop, the request for identification, and the warrant check. To hold otherwise here would be to draw artificial formalistic distinctions not grounded in logic." The courts suppressed the evidence. The Supreme Court of Iowa, in State v. Eis (Iowa 1984) 348 N.W.2d 224, observed, "No principled basis exists for distinguishing between the privacy rights of passengers and drivers in a moving vehicle. When the vehicle is stopped they are equally seized; their freedom of movement is equally affected. We therefore hold that occupants of motor vehicles, whether drivers or passengers, ordinarily have a legitimate expectation of privacy which is invaded when the vehicle is stopped by the government.... [¶] The majority of the courts which have considered the issue have upheld the standing of a passenger to challenge a vehicle stop [Citations]." (Id., at p. 226.) We find the above cases well reasoned and persuasive.
(2) We now turn to the second question raised by appellants. Was the officer's conduct, as relates to these appealing parties, a "contact" or a detention? It seems clear to us, in the light of People v. Spicer (1984) 157 Cal. App.3d 213 [203 Cal. Rptr. 599] and People v. Bailey (1985) 176 Cal. App.3d 402 [222 Cal. Rptr. 235], that there was a detention.
As in Spicer, we have passengers in a vehicle stopped in the early morning hours by a police officer demanding to see their eyes. The language from Page Supp. 6 Spicer would be identical to the case at bar. On pages 218-219, the court said, "In the case at bench, Ms. Spicer was contacted as she sat in the passenger seat of an automobile in a residential neighborhood at 1:30 in the morning. Her freedom of movement was practically nil.... To say under these circumstances Ms. Spicer `remain[ed] free to disregard the [officer's] questions and walk away' (citation) would be to defy what common sense tells us." (157 Cal. App.3d at pp. 218-219.) While it is true that the officer's state of mind during this encounter is not relevant on the issue of whether there is a detention, his communication of that state of mind by his actions is relevant. (People v. Bailey, supra, 176 Cal. App.3d at p. 407.) There is no doubt in our mind that the actions in the case at bar rose to the level of detention by reason of the acts of the police officer.
The case is remanded to the trial court with directions to grant the appellants' motions to suppress made pursuant to Penal Code section 1538.5.
Bradley, J., and Storch, J., concurred.