STATE of Wisconsin, Plaintiff-Respondent,†

v.

Larry HOWARD, Defendant-Appellant.

Court of Appeals

*No. 91-2821-CR. Submitted on briefs September 2, 1992.—Decided October 27, 1992.*

(Also reported in — N.W.2d —.)

† Petition to review granted.

743

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Nikola P. Kostich* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Mary V. Bowman,* assistant attorney general.

Before Sullivan, Fine and Schudson, JJ.

FINE, J. Larry Gene Howard appeals from a judgment convicting him of possession of cocaine with intent to deliver, *see* sections 161.16(2)(b)1 and 161.41(1m)(c)3, Stats., entered on his no contest plea, *see* section 971.06(1)(c), Stats. He challenges the trial court's denial of his suppression motion.[1] The only issue on appeal is whether a passenger in a car that has been stopped by police may challenge the lawfulness of that stop even though the passenger was not the stop's target. We conclude that the answer to this question is "yes," and, accordingly, reverse and remand for further proceedings.

---

[1] A defendant may appeal from an order denying a motion to suppress evidence even though the judgment of conviction rests on a guilty plea. Section 971.31(10), Stats. The State does not contend that Howard's right to appeal is affected by the fact that the trial court permitted him to plead "no contest" rather than "guilty," and, for purposes of section 971.31(10)'s function to facilitate appellate consideration of contested suppression issues, we perceive no difference between the two types of plea.

## I.

The evidence pertinent to this appeal is essentially undisputed. Howard was a passenger in a car that was stopped by two Milwaukee police officers. One of the officers testified at the suppression hearing that the car was stopped because its windows appeared to be illegally tinted.[2] The officer related that he searched Howard after the car was stopped because "it appeared that [Howard] was stuffing something into the coveralls or clothing that he was wearing at the time," and that the officer "didn't know if he was possibly hiding a weapon, if he had access to a weapon." The officer found cocaine on Howard's person but no weapons.

Howard moved to suppress the cocaine, contending that both the stop and the search were illegal. In an oral decision, the trial court ruled that Howard did not "have the standing to object to the stop of the vehicle," and denied the suppression motion. The trial court did not decide whether the stop and search were lawful.

## II.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, sup-

---

[2]Regulations promulgated by the Department of Transportation, Division of Motor Vehicles, make it unlawful to operate a motor vehicle on Wisconsin highways if its windshield, vent, front side, or rear windows have been "tinted by any means other than that used in the original manufacturing process." Wis. Adm. Code secs. MVD 5.51(1)(e), 5.52(1)(b).

ported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, section 11 of the Wisconsin Constitution is substantially the same:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

These provisions are coextensive. *State v. Fry,* 131 Wis. 2d 153, 171-176, 388 N.W.2d 565, 573-575 (1986), *cert. denied,* 479 U.S. 989. As we have previously noted, "to paraphrase Gertrude Stein's famous aphorism about roses, what is lawful under the Fourth Amendment to the United States Constitution, is lawful under Article I, section 11 of the Wisconsin Constitution." *State v. Murdock,* 151 Wis. 2d 198, 202, 445 N.W.2d 319, 320 (Ct. App. 1989), aff'd, 155 Wis. 2d 217, 455 N.W.2d 618 (1990). Whether the stop of the car in which Howard was riding infringed his protectible interests under the United States or Wisconsin constitutions is an issue of law that we must evaluate independently of the trial court's decision. *See State v. Fillyaw,* 104 Wis. 2d 700, 711, 312 N.W.2d 795, 801 (1981), *cert. denied,* 455 U.S. 1026.

Although the trial court determined that Howard lacked "standing" to challenge the stop of the car in which he was a passenger, the United States Supreme Court has "refocused" the inquiry from "traditional concept[s]" of "standing" to an analysis of whether " 'the

disputed search and seizure has infringed on an interest of the defendant which the Fourth Amendment was designed to protect.' " *Id.,* 104 Wis. 2d at 710, 312 N.W.2d at 800 (quoting *Rakas v. Illinois,* 439 U.S. 128, 140 (1978)).[3] The defendants in *Rakas* were passengers in an automobile that was stopped by police who suspected it was the getaway car used in a recent robbery. *Id.,* 439 U.S. at 130. A search of the car found a sawed-off rifle and ammunition. Ibid. The defendants' motion to suppress the rifle and ammunition was denied by the Illinois state courts, which held that the defendants lacked the requisite "standing" to challenge the search. *Id.,* 439 U.S. at 131-132. On certiorari to the United States Supreme Court, the defendants, relying on language in *Jones v. United States,* 362 U.S. 257 (1960), sought adoption of a "target" theory of standing so that "any criminal defendant at whom a search was 'directed' would have standing to contest the legality of that search and object to the admissibility at trial of evidence obtained as a result of the search." *Id.,* 439 U.S. at 132.[4] *Rakas,* however, "expressly reject[ed]" a "target" theory of standing. *Id.,* 439 U.S. at 135. Rather, the Court held

---

[3] *Rakas* recognized, however, that the new terminology was but old "standing" writ large: "The inquiry under either approach is the same." *Id.,* 439 U.S. at 139; *cf.* John Milton, On the New Forcers of Conscience Under the Long Parliament, in THE PORTABLE MILTON 221 (Douglas Bush, ed., 1949) ("New Presbyter is but old Priest writ large.").

[4] *Jones* stated:

> In order to qualify as a "person aggrieved by an unlawful search and seizure" one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else.

*Id.,* 362 U.S. at 261.

that "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed," *id.*, 439 U.S. at 134, irrespective of whether the aggrieved person was the "target" of the search, *id.*, 439 U.S. at 132–136. This is the test we apply. Thus, Howard's appeal here turns on whether the stop of the car in which he was a passenger implicated any of *his* rights under the Fourth Amendment. *See Rakas,* 439 U.S. at 140.[5]

In seeking affirmance of Howard's conviction, the State argues:

> By choosing to be a passenger in his uncle's vehicle, defendant assumed whatever risks might inhere in the condition of the vehicle and in his uncle's driving, insofar as the vehicle or its operation might attract legitimate police attention. The police decision to stop the vehicle was based solely on the officers' belief that the car's tinted windows violated state law. The defendant offered no evidence whatsoever to suggest that he exercised any control over, or accepted any responsibility for, apparently illegal equipment on another person's car. Thus, any privacy expectation defendant might have had regarding a police stop of the vehicle for an equipment violation was not legitimate, and should not be afforded fourth amendment protection.

The State has made this argument before. *See State v. Guzy,* 139 Wis. 2d 663, 671, 407 N.W.2d 548, 552 (1987), *cert. denied,* 484 U.S. 979. In *Guzy,* a pickup truck was stopped by law enforcement officers because the passenger, Guzy, looked like a suspect in a recent robbery. *Id.,*

---

[5]As noted, Howard's rights under the United States and Wisconsin constitutions are co-extensive.

139 Wis. 2d at 667, 407 N.W.2d at 551. The supreme court concluded "that because Guzy was the target of the vehicle stop in this case, the stop was a 'seizure' of Guzy within the meaning of the fourth amendment and art. I, sec. 11," and "[a]ccordingly, Guzy has the requisite standing to challenge the stop." *Id.*, 139 Wis. 2d at 672, 407 N.W.2d at 552-553.[6] *Guzy* specifically left open the question of whether a passenger could challenge a stop in a situation where, as here, the passenger is not the stop's target. *Id.*, 139 Wis. 2d at 672 n.2, 407 N.W.2d at 553 n.2.

The United States Supreme Court has "long acknowledged that 'stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth] Amendmen[t], even though the purpose of the stop is limited and the resulting detention quite brief.' " *Berkemer v. McCarty,* 468 U.S. 420, 436-437 (1984) (traffic stop not custodial for purposes of *Miranda v. Arizona,* 384 U.S. 436 (1966)) (brackets in original, quoting *Delaware v. Prouse,* 440 U.S. 648, 653 (1979)). In *Prouse,* the Court considered a traffic stop to check the car's registration and the driver's operating license. *Id.,* 440 U.S. at 650. Traffic stops, the Court noted, "generally entail law enforcement officers signaling a moving automobile to pull over to the side of the

---

[6]*Guzy* did not discuss the United States Supreme Court's rejection in *Rakas* of the "target" theory of "standing." The court of appeals' decision in *Guzy,* however, did not rely on the "target" theory; rather, it held, as we do here, that "an occupant's location within a stopped car has no bearing on that person's fourth amendment right to be free from unreasonable seizure." *State v. Guzy,* 134 Wis. 2d 399, 406, 397 N.W.2d 144, 148 (Ct. App. 1986), *aff'd in part and rev'd in part,* 139 Wis. 2d 663, 407 N.W.2d 548 (1987), *cert. denied,* 484 U.S. 979.

roadway, by means of a possibly unsettling show of authority"; they "interfere with freedom of movement, are inconvenient, and consume time"; and, additionally, "may create substantial anxiety." *Id.,* 440 U.S. at 657. Indeed, the stopping of an automobile by law enforcement officers is at least equally as intrusive to passengers as the momentary *Terry*-stop of pedestrians, which, although authorized if the officer "has reason to believe that he is dealing with an armed and dangerous individual," *Terry v. Ohio,* 392 U.S. 1, 27 (1968), is still a "seizure" under the Fourth Amendment, *id.,* 392 U.S. at 16. As *Prouse* explains:

> An individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation. Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed. As Terry v. Ohio, supra, recognized, people are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles.

*Id.,* 440 U.S. at 662–663 (footnote omitted). Although *Prouse* did not concern a passenger, its rationale applies with equal vitality to passengers, whose mobility is, per

force, inextricably intertwined with that of the car in which they are riding. In sum, it is clear that a passenger's Fourth Amendment interests are implicated by a law-enforcement stop of a motor vehicle in which the passenger is riding whether or not he or she is the stop's target. *See, e.g.,* United States v. Erwin, 875 F.2d 268, 269-270 (10th Cir. 1989); *State v. Eis,* 348 N.W.2d 224 (Iowa 1984); *People v. Kunath,* 425 N.E.2d 486, 490 (Ill. App. Ct. 1981).

### III.

This court may not decide issues of fact. *Wurtz v. Fleischman,* 97 Wis. 2d 100, 107, 293 N.W.2d 155, 159 (1980). Since the trial court did not make any findings of fact concerning the stop's legality, or the lawfulness of the officers' search of Howard, we must remand for an evidentiary hearing.[7] See *id.,* 97 Wis. 2d at 108, 293 N.W.2d at 159.

---

[7]We note that the State's brief twice apparently agrees that Howard may contest the stop when it concedes that he "may have had a right, under *Delaware v. Prouse,* to question whether [the police] had any reason for stopping the car," (bold in original), and that "*Prouse* entitles the defendant to challenge whether the vehicle was stopped for no reason at all." The State suggests, however, that the scope of Howard's inquiry is limited and excludes "the details and substance" of the officers' belief that the windows were illegally tinted, and the "exact degree of suspicion or probable cause supporting the stop." We disagree. Clearly, if the legality of the police stop can be challenged at all, it often can only be challenged by questions that do explore the "details and substance" of the officers' suspicions, beliefs, and actions.

*By the Court.*—Judgment reversed, and cause remanded.