STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Larry HOWARD, Defendant-Appellant.

Supreme Court

*No. 91-2821-CR. Oral argument May, 26, 1993.—Decided June 16, 1993.*

(Also reported in 501 N.W.2d 9.)

For the plaintiff-respondent-petitioner the cause was argued by *Mary V. Bowman,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Nikola P. Kostich,* Milwaukee.

LOUIS J. CECI, J.   This case comes before the court on a petition for review by the State of Wisconsin of a published court of appeals decision which reversed a judgment of conviction entered in the circuit court for Milwaukee County, William D. Gardner, Circuit Judge. The sole issue presented is whether Larry Howard (the defendant), who was a passenger in a vehicle the police stopped for an equipment violation, can challenge the lawfulness of that vehicle stop. The court of appeals

concluded that the vehicle stop in question "implicated" the defendant's fourth amendment rights and therefore held that the defendant could challenge the stop. *State v. Howard,* 171 Wis. 2d 743, 752, 492 N.W.2d 371 (Ct. App. 1992). We disagree and reverse.

In May of 1990, the defendant was riding as a passenger in an automobile owned and operated by his uncle. Milwaukee police officers Merriweather and Harden observed the defendant's uncle's car and determined it had dark and illegally tinted windows. *See* Wis. Admin. Code secs. MVD 5.51(1)(b), 5.51(1)(e) (Dec. 1989) (making it illegal to operate motor vehicle if windows have been "tinted by any means other than that used in the original manufacturing process"). The officers decided to stop the car, to question the driver, and to "probably" cite the driver. Officer Harden turned on the siren and activated the red lights. Either as the defendant's uncle's car was stopping or after it had stopped, Officer Merriweather saw the defendant reaching across his body, leaning back, and raising his buttocks off the seat of the car.

After both cars had stopped, Officer Merriweather approached the passenger side of the car and asked the defendant to step outside the car. The officer then asked the defendant to place his hands on the hood of the car and told the defendant he was going to pat him down. Officer Merriweather testified that he told the defendant that "[a]fter [the pat-down] you can go on about your business. . . . We'll deal with the driver of the car."

The pat-down turned into an altercation and with the help of additional officers, the police eventually subdued the defendant. The police discovered a pager and a bag containing forty-eight grams of cocaine hidden under the defendant's bib overalls. The police also recovered over $800.00 in cash from the defendant's pocket.

The defendant's uncle was cited for having illegally tinted windows.

The defendant was charged with possession of cocaine with intent to deliver. After being bound over for trial, the defendant filed a motion to suppress the cocaine. The state challenged the defendant's "standing" to challenge the stop of a car in which he was a passenger.

The circuit court held hearings on the standing issue and eventually concluded that the defendant did not have standing to challenge the stop of his uncle's car. The circuit court reasoned that a passenger "really gives his own control and . . . movement of his person to the driver of the automobile . . .." Additionally, the court said that a passenger "must know . . . that if the driver . . . violates any traffic or safety laws, that that vehicle is subject [to be stopped] regardless of what the passenger does or does not do." Having reached this conclusion, the circuit court did not address whether the stop of the defendant's uncle's car was lawful.

The defendant then entered a plea of no contest. He was convicted of possession of a controlled substance with intent to deliver, in violation of secs. 161.16(2)(b)1 and 161.41(1m)(c)3, Stats.

The court of appeals reversed, saying that "it is clear that a passenger's Fourth Amendment interests are implicated by a law-enforcement stop of a motor vehicle in which the passenger is riding . . .." *Howard,* 171 Wis. 2d at 752. Because the circuit court had made no findings of fact regarding the lawfulness of the vehicle stop or the ensuing search, the court of appeals remanded. *Id.* We granted review.

■■■

Can the defendant challenge the stop of the car in which he was a passenger? This is a question of law that

we review without deference to the lower courts. *State v. Guzy,* 139 Wis. 2d 663, 671, 407 N.W.2d 548 (1987).

The parties refer to this issue as one of standing. Using the term "standing," however, does not serve any useful analytical purpose. *Rakas v. Illinois,* 439 U.S. 128, 138 (1978). Fourth amendment rights are personal rights and cannot be vicariously asserted. *Id.* at 133–34. Questions of standing to challenge searches and seizures are "more properly subsumed under substantive Fourth Amendment doctrine." *Id.* at 139. The analysis used, therefore, to determine whether a defendant can challenge a search or a seizure focuses on a defendant's rights under the fourth amendment. *Id.* The inquiry "requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." *Id.* at 140. *See also Rawlings v. Kentucky,* 448 U.S. 98, 104–05 (1980); *United States v. Salvucci,* 448 U.S. 83 (1980).

The question in this case, then, is whether the stop of the defendant's uncle's car in which the defendant was riding as a passenger infringed upon any of the defendant's fourth amendment rights. The defendant has the burden of proving that it did. *Rawlings,* 448 U.S. at 104–05.

The fourth amendment protects two basic types of expectations. One involves searches, the other seizures. *United States v. Jacobsen,* 466 U.S. 109, 113 (1984). A search takes place when "an expectation of privacy that society is prepared to consider reasonable is infringed." *Id.* (footnote omitted). A seizure of property takes place when "there is some meaningful interference with an individual's possessory interests in that property." *Id.*

(footnote omitted). A seizure of the person takes place when an officer, by means of physical force or show of authority, restrains a person's liberty. *Terry v. Ohio,* 392 U.S. 1, 19 n.16 (1968).

The ultimate question is whether the defendant's "claim to privacy from government intrusion is reasonable in light of all the surrounding circumstances." *Rakas,* 439 U.S. at 152 (Powell, J., concurring). *Cf. State v. Milashoski,* 163 Wis. 2d 72, 85, 471 N.W.2d 42 (1991). Although this standard may fail to provide a bright-line rule, a bright-line rule would fail to be faithful to the purposes of the fourth amendment. *Rakas,* 439 U.S. at 152 (Powell, J., concurring).

At the outset, it is important to note what is not at issue in this case. We do not address the conduct of the police in asking the defendant to step out of the car, or in the subsequent altercation and search of the defendant. The only conduct at issue is the vehicle stop. We do not decide whether that stop was constitutional, only whether it infringed upon a protected interest of the defendant. If it did, then the defendant can challenge the stop's constitutionality.

It is also important to note that our decision in *Guzy* did not address the facts of this case. In *Guzy,* we concluded that "because Guzy was the target of the vehicle stop in this case, the stop was a 'seizure' of Guzy within the meaning of the fourth amendment and [Wis. Const.] art. I, sec. 11, and therefore infringed on an interest of Guzy protected by the fourth amendment and art. I, sec. 11." *Guzy,* 139 Wis. 2d at 672. However, we made clear that "[w]e [did] not deal with the issue of a passenger's standing to challenge the stop when the passenger is not the target of the stop." *Id.,* n.2. From this record it is clear that the defendant passenger in this

case was not the target of the vehicle stop. Moreover, to the extent that *Guzy* has relevance to this case, we question its reasoning. *Guzy* apparently relied, at least in part, on a "target" theory of standing that the United States Supreme Court rejected in *Rakas. See Rakas,* 439 U.S. at 132–40.

Likewise, *Delaware v. Prouse,* 440 U.S. 648 (1979), does not control the outcome of our inquiry. *Prouse* stated broadly that "stopping an automobile and detaining its occupants constitute a 'seizure' . . . even though the purpose of the stop is limited and the resulting detention quite brief." *Id.* at 653. However, the Supreme Court apparently never resolved the issue of whether the respondent in *Prouse* was the driver or passenger of the automobile. *Id.* at 650, n.1. Further, the "standing" issue was apparently not raised in *Prouse.*

We have no doubt that the stop of his uncle's car did not infringe upon any of the defendant's fourth amendment rights relative to that car. The defendant does not suggest that he had a property or possessory interest in the car. *See generally State v. Fillyaw,* 104 Wis. 2d 700, 711–12 n.6, 312 N.W.2d 795 (1981) (discussing factors which may be "useful" in determining "standing"). Additionally, the defendant has not claimed that he had dominion or control over the vehicle. *Id.*

Did the stop infringe upon the defendant's personal interest in freedom of movement under the facts of this case? The question is whether a fourth amendment seizure occurred when the car in which the defendant was a passenger was stopped for a traffic violation. This question is highly factual and its resolution depends upon all of the circumstances of the case. *See U.S. v. Boden,* 854 F.2d 983, 991 (7th Cir. 1988).

Not all citizen encounters with the police amount to seizures. *See Michigan v. Chesternut,* 486 U.S. 567, 573 (1988). The test used to determine whether a seizure of the person has occurred is whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554 (1980) (footnote omitted); *INS v. Delgado,* 466 U.S. 210, 215 (1984). The test is an objective one. *Chesternut,* 486 U.S. at 574. We look to the reasonable person's interpretation of the conduct in question. *Id.* This reasonable person standard allows police to determine the fourth amendment consequences of their acts in advance. *Id.* It also ensures that the scope of the fourth amendment does not vary with each defendant's state of mind. *Id.* The subjective intent of the officers is relevant only to the extent it has been communicated to the defendant. *Id.* at 575 n.7.

In this case, after reviewing the circumstances surrounding the stop, we conclude that the officers' conduct was not so intimidating that a reasonable person in the defendant's position would have believed his freedom of movement had been restricted in any meaningful way. As the circuit court judge recognized, passengers in cars ordinarily have their freedom to move about meaningfully restricted. *Cf. Delgado,* 466 U.S. at 217. Passengers also ordinarily give up their right to control their movement to some extent. *Cf. United States v. Martinez-Fuerte,* 428 U.S. 543, 561 (1976) ("[O]ne's expectation of privacy in an automobile and of freedom in its operation are significantly different from the traditional expectation of privacy and freedom in one's residence.").

Although the presence of a police car may at times be somewhat imposing, the stop in this case took place on a public street during daylight. The mere approach of officers identified as such does not constitute a seizure. *See generally Chesternut,* 486 U.S. at 575. Even the presence of a police car driving parallel to a running pedestrian, without more, does not constitute a seizure. *Id.*

The defendant argues that a majority of the jurisdictions that have addressed this issue have held that passengers can contest the lawfulness of the stop. We acknowledge that there is authority holding that a passenger may challenge the lawfulness of a stop of a vehicle. However, as we have said, whether a seizure has occurred depends on the facts of each case.

One of the cases the defendant relies on, *State v. DeMasi,* 419 A.2d 285 (R.I. 1980), makes just this point. The *DeMasi* court concluded that a passenger had standing to challenge a stop. *Id.* at 294. However, to support its conclusion, the court relied on the facts that, after the stop, the passenger had been asked for identification and had been the subject of a warrant check. *Id.* In contrast, in this case, we address only a vehicle stop. Moreover, the *DeMasi* court was careful to note that it did not mean to imply that all passengers in a vehicle will always be able to challenge the stop of that vehicle. *Id.,* n.9 (citing *Rakas,* 439 U.S. at 147).

Were we to agree with the defendant and the court of appeals' reasoning in this case, all passenger defendants could challenge the lawfulness of the stop of a vehicle in which they were passengers, regardless of the circumstances surrounding the stop. Such a bright-line rule would deny the infinite variety of circumstances that surround police encounters with citizens. Such a bright-

line rule would also disregard the Supreme Court's clear directive that we take "all of the circumstances surrounding the incident" into account when determining whether police conduct amounts to a seizure under the fourth amendment. *Chesternut*, 486 U.S. at 572.

We conclude that the defendant cannot challenge the lawfulness of the stop of the vehicle driven by his uncle in which he was a passenger.

*By the Court.*—The decision of the court of appeals is reversed.

HEFFERNAN, CHIEF JUSTICE *(dissenting)*. I believe that today's holding improperly restricts the right of individuals to be free of unreasonable government searches and seizures under both the U.S. and Wisconsin Constitutions.[1] Rather than permit the defendant an opportunity to introduce evidence in respect to the permissibility of the instant police stop, the majority engages in an *ex post facto* analysis as to the reasonableness of Howard's expectations of privacy upon entering his uncle's car. I find the reasoning of the majority without legal foundation and contrary to the public policy of this state, accordingly I dissent.

Insofar as today's holding apparently will require courts henceforth to engage in dual Fourth Amendment analyses, *i.e.,* first to determine the scope of the defendant's protectable interest and second to consider the merits of the search and seizure, I conclude that it is contrary to state public policy and the efficient adminis-

---

[1] The right of the people to be secured in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ..

U.S. Const., amend. IV.; Wisconsin Const., art. I, § 11.

tration of criminal justice. In a sense the holding of the majority is a procedural expansion of the exclusionary rule. To ensure that the full protection of the Fourth Amendment is extended to all defendants, this court should permit defendants the right to litigate the merits of a search and seizure rather than require as a condition precedent that the defendant first convince the court during a motion hearing that he in fact has a protectable interest. Clearly, when the assertion of standing is at least arguable the merits should be determined. *See Rakas v. Illinois,* 439 U.S. 128, 166 (1978) (White, J. *dissenting).*

More troubling yet is the majority's conclusion that Howard had no protectable interest in his uncle's car under the facts of this case. Of course Howard has no interest of privacy in his uncle's car, but that is not the question. The question is whether he has an interest in his personal privacy while a passenger in a car owned, operated, and controlled by some one else. In the opinion for the court of appeals, Judge Fine appropriately and correctly analyzed the privacy rights of a passenger. Judge Fine emphasized that the rights are personal to the passenger and relied on *Delaware v. Prouse,* 440 U.S. 648, 662–63 (1979), which explicated the fact that the freedom of movement of a passenger is inextricably bound up with that of the vehicle. It defies logic and the laws of physics for the state to assert that the rights of a passenger are unrelated to the stopping and seizing of the vehicle.

I emphasize that the chances that Howard can successfully have the seized evidence suppressed is minimal, but to assert that he has no arguable right of privacy merely because he is in someone else's car appears to be contrary to accepted fourth amendment jurisprudence. In so reasoning, the majority distinguishes the instant

case from our decision in *State v. Guzy,* reasoning that Howard, unlike the defendant in *Guzy,* was not the target of the police stop.[2] I disagree. When the police stopped Howard's uncle's car, they effectively stopped all of the occupants of the car for purposes of the Fourth Amendment. To hold otherwise ignores the reality of vehicular stops and merely serves to muddy the application of the Fourth Amendment. It also ignores *Rakas* wherein the majority accepted the proposition that the essence of standing was a personal stake or interest in the outcome.

In the instant case, the police stopped the car in question because they detected what were thought to be illegally tinted windows in violation of Wis. Admin. Code secs. MVD 5.51(1)(b) and 5.51(1)(e) (Dec. 1989). Tinted windows pose a significant risk to police who are unable to view into the car to detect the possible possession of weapons or other contraband. *See* State's Brief-in-Chief at 21-22. In other words, police stop vehicles for illegally tinted windows because they are concerned that occupants of such cars may themselves present a danger or be prone to illegal behavior. Given the obvious link between the reason for the stop and the occupants of the vehicle, it is disingenuous of the majority to conclude that Howard was not a target of the police decision to stop an automobile with tinted windows when Howard was one of the persons in that vehicle. Accordingly, I dissent.

---

[2] This dissent recognizes that *Rakas v. Illinois,* 439 U.S. 128 (1978), specifically disavowed the "target" rationale. The majority nonetheless appears to recognize the distinction as a matter of state law. Even if it is, the facts here do not sufficiently distinguish this case from *Guzy.*

I am authorized to state that Justices ABRAHAMSON and BABLITCH join in this dissent.