STATE of Wisconsin, Plaintiff-Respondent,

v.

Anthony HARRIS, Defendant-Appellant-Petitioner.

Supreme Court

*Nos. 95–1595–CR, 95–1596–CR. Oral argument October 17, 1996.—Decided December 27, 1996.*

(Also reported in 557 N.W.2d 245.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Robert J. Diaz*, Brookfield.

For the plaintiff-respondent the cause was argued by *Warren D. Weinstein*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

JANINE P. GESKE, J. This is a review of a court of appeals decision affirming the denial of a motion to

suppress evidence ordered by Milwaukee County Circuit Judge Daniel L. Konkol against the defendant, Anthony Harris.[1] Harris ultimately pled no contest to the misdemeanor offense of unlawful possession of marijuana.[2] This case presents us with two questions. First, should this court adopt a bright line rule that when police officers stop a vehicle, all of the occupants of that vehicle have standing to challenge the stop as a seizure under the Fourth Amendment to the United States Constitution and art. I, sec. 11 of the Wisconsin Constitution? Second, if such a stop is a seizure of all of the vehicle's occupants, did the officers here have reasonable, articulable suspicion to seize Harris? We hold that when police stop a vehicle, all of the occupants of that vehicle are seized and thus have standing to object to the seizure. We further hold that the officers here lacked suspicion, grounded in specific, articulable facts and reasonable inferences from those facts to seize any of the occupants in the vehicle, including Harris.

## FACTS

On June 8, 1994, at approximately 11:30 p.m., a car was parked in front of the home of a robbery suspect for whom the Milwaukee police were searching.[3] The only description police had of the suspect, other than height and weight, was of a young black male with very short hair. As far as the investigating officers knew,

---

[1] *State v. Harris*, Nos. 95-1595-CR and 95-1596-CR, unpublished op. at 8 (Wis. Ct. App., October 17, 1995).

[2] The conviction at issue here was for Possession of a Controlled Substance (Marijuana), contrary to Wis. Stat. §§ 161.14 (4)(t), 161.41(3r) and 161.01(14). Unless otherwise indicated, all subsequent references are to the 1993-94 Wisconsin Statutes.

[3] The officer who testified at the suppression hearing did not recall when the robbery had occurred.

the suspect did not own a car. The officers saw no one exit or enter the car while it remained parked in front of the suspect's house. There was no testimony that the driver of the vehicle violated any traffic laws or handled the car in an erratic fashion.

When the car in question pulled away from the curb, plain clothes officers stopped its travel by blocking the car with their own unmarked vehicle. The officers exited their squad car and approached the stopped vehicle. At least one of the officers had his service gun drawn. One officer approached the driver's side of the car, and later testified that he saw three individuals in the vehicle, the driver, a front seat passenger, and a passenger seated behind the driver. The rear seat passenger was Mr. Harris.

The only testifying officer at the suppression hearing told the trial court that he "could not observe the occupants [of the car] until I approached it," agreeing in response to a question from defense counsel that he "had no idea" who or how many people were in the car at the time of the stop. It was only after the vehicle was stopped, and as the officer approached the driver's door, that he could see that the front passenger resembled the description of the suspect by virtue of being a young black male with close-cropped hair.

The driver rolled down his window as one of the officers approached. That officer testified that "smoke came out of the car which smelled like burning marijuana." The officer ordered the driver out of the car. After patting him down, the officer asked what the smell was, and the driver replied, "They're smoking marijuana." Another officer then ordered Harris out of the car, patted him down and removed a plastic bag containing six bundles of suspected marijuana from Harris' waistband.

## PROCEDURAL HISTORY

The Milwaukee County District Attorney charged Harris with one count of possession of a controlled substance (marijuana). Seeking to suppress evidence of the marijuana, Harris argued to the circuit court that the seized marijuana was the "fruit" of an illegal seizure. Although the court agreed that the police officers did not have reasonable, articulable suspicion to stop the car, the circuit court held that Harris lacked standing to complain. Further, the court ruled that once the vehicle was stopped, and before there was any other contact with Harris, one of the officers smelled smoke like burning marijuana, and received information from the driver that the defendant was using marijuana. At that point, according to the circuit court, the officers had reasonable, articulable suspicion to search Harris for possession of a controlled substance. Harris ultimately pled no contest to the possession charge, and pursued an appeal.[4]

On appeal, the State conceded that the circuit court erred in ruling that Harris lacked standing. The court of appeals disregarded the State's concession, and upheld the circuit court, relying on our decision in *State v. Howard*, 176 Wis. 2d 921, 928, 501 N.W.2d 9 (1993) to conclude that the stop of Harris, a passenger, was not a seizure. The court of appeals read *Howard* to preclude the consideration of events after the "actual stop" in a determination of standing, and therefore disregarded the fact that the officers approached the car in question with gun(s) drawn. *Id.* at 929. The court of appeals also rejected Harris' theory that he was a "tar-

---

[4] Pursuant to Wis. Stat. § 971.31(10), a defendant may appeal from an order denying a motion to suppress evidence even though the judgment of conviction rests on a guilty plea.

get" of the stop, relying on both our *Howard* decision and on *Rakas v. Illinois*, 439 U.S. 128, 134 (1978), which stated that "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." Concluding that a reasonable person could not have believed his freedom of movement had been restricted in any meaningful way at the time of the stop, the court of appeals ruled that Harris' constitutional rights were not violated by the stop.[5] We granted Harris' petition for review.

## STANDARD OF REVIEW

In reviewing an order suppressing evidence, this court will uphold the trial court's findings of fact unless

---

[5] The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." The provisions of the Fourth Amendment are applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

Art. I, sec. 11 of the Wisconsin Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

249

they are clearly erroneous. Wis. Stat. § 805.17(2).[6] However, the issues presently before us, 1) a passenger's standing to challenge the lawfulness of the police-initiated stop, and 2) the legality of the initial investigative stop in this case, are questions of law that we review *de novo. State v. Guzy,* 139 Wis. 2d 663, 671, 407 N.W.2d 548, *cert. denied,* 484 U.S. 979 (1987).

## STANDING

Whether a passenger of a vehicle stopped as part of a criminal investigation, and who is not a target of the stop, has standing to challenge the lawfulness of the stop is a question of first impression in Wisconsin. In *Guzy,* we expressly did not decide this question. 139 Wis. 2d 663, 672, n.2. In *Howard,* 176 Wis. 2d at 924, we considered a passenger's challenge to the lawfulness of a police-initiated traffic stop. We held that the standing analysis must begin with an inquiry as to whether the passenger's own Fourth Amendment rights were implicated in the stop. *Id.* We concluded in *Howard* that the traffic stop in that case "was not so intimidating that a reasonable person in the defendant's position would have believed his freedom of movement had been restricted in any meaningful way." *Id.* at 929.

The court of appeals affirmed Harris' conviction, relying first on the rationale of *Howard* that the defendant did not have a possessory interest in, or "dominion or control over," the suspect vehicle. Further, the court of appeals ruled that, as in *Howard,* "at the time of the

---

[6] This statutory standard of review codifies the common law standard requiring affirmance of trial court findings unless they are "against the great weight and clear preponderance of the evidence." *Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643, 340 N.W.2d 575 (Ct. App. 1983).

stop. . .the 'officers' conduct was not so intimidating that a reasonable person in [Harris'] position would have believed his freedom of movement had been restricted in any meaningful way,' " applying the case-by-case analysis endorsed in *Howard*.[7]

As petitioner Harris points out, the real standing analysis depends not, as in other constitutional claims, on whether there has been injury in fact, *Rakas*, 439 U.S. at 139, (citations omitted), but whether the action taken by the law enforcement officers constitutes a seizure of the defendant. In other words, has the disputed seizure infringed on an interest of the defendant which the Fourth Amendment and art. I, sec. 11 were designed to protect? *See State v. Dixon*, 177 Wis. 2d 461, 467, 501 N.W.2d 442 (1993). We need only answer yes to that question to determine that the defendant has standing, before we proceed to a substantive analysis of the legality of the seizure. *Rakas*, 439 U.S. at 138-40.

---

[7] The court of appeals also ruled that the question of "standing" in a Fourth Amendment case does not depend on the "target analysis" we employed in *State v. Guzy*, 139 Wis. 2d 663, 407 N.W.2d 548 (1987) *cert. denied*, 484 U.S. 979. *See also Rakas v. Illinois*, 439 U.S. 128, 135-37 (1978). The *Rakas* court rejected the target theory because it would effectively grant standing to assert a violation of the constitutional rights of another, resulting in only a marginal increase in Fourth Amendment protection and at a cost of substantial administrative difficulties in proving police motivation against the accused individual. In *Rakas*, defendants challenged the validity of the search of the vehicle in which they were riding, and never asserted that they owned the vehicle or the contraband seized. We agree that the target analysis is unnecessary, and is difficult for courts to apply.

Harris asks us to establish a bright line rule that all passengers have standing to challenge a vehicular stop as an unconstitutional seizure. Harris points to the growing number of federal circuit and state court decisions which recognize the right of a passenger to challenge the lawfulness of a vehicle stop. This trend reflects a recognition of the similar interests passengers and drivers possess in remaining free from unreasonable seizure within the meaning of the Fourth Amendment, and thus each may challenge a vehicular stop. *See, e.g., United States v. Erwin*, 875 F.2d 268, 269 (10th Cir. 1989); *People v. Lionberger*, 230 Cal. Rptr. 358 (Cal. Sup. 1986). Alternatively, Harris asks us to apply the case-by-case approach of *Howard*, and rule that the vehicular stop here constituted a seizure of Harris, a passenger.

The State, on the other hand, asks us to refrain from establishing a blanket rule that a stop of a vehicle is automatically a seizure of all of its occupants. Rather, relying on *United States v. Mendenhall*, 446 U.S. 544 (1980), and *Howard*, the State asks us to affirm the court of appeals and rule that the determination of whether a passenger has been seized involves a case-by-case assessment of the surrounding facts and circumstances. To determine whether a seizure of the person had occurred in *Howard*, we considered whether, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." 176 Wis. 2d at 929 (citing *United States v. Mendenhall*, 446 U.S. at 554)(footnote omitted). The State concedes that Harris was seized as a result of the stop here, but contends that the police officers had reasonable, articulable suspicion to conduct the stop and determine the identity of the vehicle occupants.

In *Howard* we determined that the defendant was not seized when the vehicle in which he was riding was stopped for an equipment violation. 176 Wis. 2d at 929. The vehicle, owned and driven by Howard's uncle, bore illegally tinted windows. *Id.* at 924. It was only as or after the truck stopped that Howard himself made a physical motion which directed the suspicion of the officer to Howard.

Howard made no claim, for purposes of standing, that he had dominion or control over the vehicle. *Id.* at 928. The question was whether the stop infringed on Howard's personal interest in freedom of movement, under the facts of that case. *Id.* We ruled there that the officer's conduct was not so intimidating in stopping the truck that a reasonable person in Howard's position would have believed his freedom of movement had been restricted in any meaningful way. *Id.* at 929. We did so based on a consideration of the circumstances surrounding the incident, and declined to hold, as a blanket rule, that passengers can challenge the lawfulness of a vehicle stop. *Id.* at 930.

The Supreme Court has said that a seizure of the person occurs when an officer, by means of physical force or a show of authority, restrains a person's liberty. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of the [Fourth Amendment]." *Whren v. United States*, — U.S. —, 116 S. Ct. 1769, 1772 (1996).

While never directly holding that a stop of a vehicle is a seizure of the v ehicle's passengers, the United States Supreme Court has strongly suggested that con-

clusion. *See, e.g., Berkemer v. McCarty*, 468 U.S. 420, 436 (1984) (a traffic stop "significantly curtails the 'freedom of action'[8] of the driver and the passengers, if any, of the detained vehicle"); *Colorado v. Bannister*, 449 U.S. 1, 4 n.3 (1980) ("There can be no question that the stopping of a vehicle and the detention of its occupants constitute a 'seizure' within the meaning of the Fourth Amendment"); *Delaware v. Prouse*, 440 U.S. 648, 653 (1979) ("stopping an automobile and detaining its occupants constitute a 'seizure' ").

Similarly, most of the federal circuit courts have held that a traffic stop of a vehicle constitutes a seizure of any of the passengers. *People v. Bell*, 51 Cal. Rptr. 2d 115, 119 (Ct. App. 1996).[9] Several other state courts

[8] Courts variously describe a vehicle occupant's Fourth Amendment interest in freedom from unreasonable governmental intrusion as a privacy right, or more particularly, as a right to freedom of movement. In *Terry v. Ohio*, 392 U.S. 1, 25 (1968), the Court referred to "personal security." Later, in *Delaware v. Prouse*, 440 U.S. 648, 657 (1979), the Court included "freedom of movement" as one of the individual's Fourth Amendment interests implicated by a traffic spot check. In *Minnesota v. Olson*, 495 U.S. 91, 98 (1990), the Court broadly referred to the "everyday expectations of privacy that we all share." In *State v. Guzy*, 139 Wis. 2d 663, 671, 407 N.W.2d 548, *cert. denied*, 484 U.S. 979 (1987), we united those concepts, "a legitimate expectation of privacy in the uninterrupted travel of the vehicle," and also referred to the "right to be free of governmental interference." *Id.* We later referred to the right as "personal security." *Id.* at 677.

[9] *United States v. Kimball*, 25 F.3d 1, 5 (1st Cir. 1994); *United States v. Rusher*, 966 F.2d 868, 874 n.4, 875, (4th Cir.) *cert. denied*, 506 U.S. 926 (1992); *United States v. Roberson*, 6 F.3d 1088, 1091 (5th Cir.), *cert. denied*, 510 U.S. 1182 (1993); 510 U.S. 1204; — U.S. — , 114 S. Ct. 1383; *United States v. Powell*, 929 F. 2d 1190, 1195 (7th Cir.), *cert. denied*, 502 U.S.

have noted, "No principled basis exists for distinguishing between the privacy rights of passengers and drivers in a moving vehicle. When the vehicle is stopped they are equally seized; their freedom of movement is equally affected. . . .occupants of motor vehicles, whether drivers or passengers, ordinarily have a legitimate expectation of privacy which is invaded when the vehicle is stopped by the government." *Bell*, 51 Cal. Rptr. 2d at 120 (citing *State v. Eis*, 348 N.W.2d 224, 226 (Iowa 1984); *People v. Lionberger*, 230 Cal. Rptr. 358 (1986)).[10] In *Bell*, the court held that the detention of the driver on a traffic violation stop was equally a detention of the passenger. 51 Cal. Rptr. 2d at 122. Therefore, the passenger in *Bell* was detained and had standing to challenge the lawfulness of the driver's detention. *Id.*[11]

We have said that stopping an automobile and detaining its occupants is a "seizure" which triggers Fourth Amendment protections.[12] *Guzy*, 139 Wis. 2d at

---

981 (1991); *United States v. Portwood*, 857 F. 2d 1221, 1222 (8th Cir.), *cert. denied*, 490 U.S. 1069 (1988), disapproved on other grounds in *Taylor v. United States*, 495 U.S. 575 (1990); *United States v. Erwin*, 875 F. 2d 268, 270 (10th Cir. 1989).

[10] We note that the *Lionberger* court went on to consider whether the officer's contact with the passenger was a consensual encounter or a detention, and concluded that it was a detention because the officer demanded to see the passenger's eyes. *People v. Lionberger*, 230 Cal. Rptr. 358, 361 (1986).

[11] The California court noted at the same time that every search and seizure case turns on its own facts, and therefore that court limited its holding on standing to a typical traffic stop. *People v. Bell*, 51 Cal. Rptr. 2d 115, 122, n.3 (1996).

[12] Sometimes appellate cases use the terms "stop," "seizure," and "detention," interchangeably. *See, e.g., People v. Bell*, 51 Cal. Rptr. 2d 115, 122 (1996) ("detention" of driver was equally "detention" of passenger sufficient to recognize standing

674. In that case, sheriff's deputies made an investigatory stop of a pickup truck because the general appearance of the truck's passenger matched that of a suspect in a robbery conducted less than one hour earlier. *Id.* at 667. Although we characterized defendant Guzy as the "target" of the seizure, the reasoning we used there to find that he was entitled to protection under the Fourth Amendment and art. I, sec. 11 is equally valid for a vehicle occupant who is not a "target." When an individual has been seized "at home, in the street, or in a vehicle, as a driver or passenger, the result is the same: the person has been deprived of freedom of movement in precisely the same degree. The Fourth Amendment and art. I, sec. 11 [of the Wisconsin Constitution] guarantee 'the right of the people to be secure in their person.' Neither provides any exception that is dependent upon the location of the person seized." *Guzy*, 139 Wis. 2d at 674-75; *see also Delaware v. Prouse*, 440 U.S. at 653-54, 662-63.

Recognizing the growing trend in other state and federal jurisdictions, and more importantly, recognizing that when a passenger rides in a vehicle he or she does not surrender the Fourth Amendment and art. I, sec. 11 right against unreasonable seizure, we now adopt the bright line rule described in *Bell*. Moreover, we apply this rule to all police-initiated vehicle stops, finding no rational distinction, for standing purposes,

---

of passenger). In this opinion, we primarily use the term "stop" to refer to the act of halting a vehicle's progress, or as in Wis. Stat. § 968.24, to mean the act of halting a person's progress. We use "seizure" as a legal term referring to a person or possession in relation to rights secured by the Fourth Amendment. We use the term "detention" when discussing the duration of a "seizure."

between the rights of passengers in a traffic stop and the rights of passengers in an investigatory stop. We hold that when police stop a vehicle, all of the occupants of that vehicle are seized and have standing to challenge the stop.

The need for a bright line rule granting a passenger the right to challenge the lawfulness of a police-initiated vehicle stop is now apparent from the problems created by the case-by-case analysis found in *Howard*. In this case, the court of appeals, following language from *Howard*, concluded that Harris could not challenge the stop because at the time of the stop, that is, without considering events after the actual stop, the "officer's conduct was not so intimidating that a reasonable person in the defendant's position would have believed his freedom of movement had been restricted in any meaningful way." 176 Wis. 2d at 929. The court of appeals concluded that the point at which the officers exited their vehicles and approached the stopped car with gun(s) drawn was beyond the time frame we review in considering the nature of the stop for standing purposes.

Even though Harris' personal freedom of movement was clearly restricted in a meaningful way at the time the car was physically stopped, under *Howard* the court of appeals was compelled to conclude that he did not have the right to challenge the lawfulness of the stop. The *Howard* decision fails to recognize our conclusion in *Guzy* that stopping a vehicle and detaining its occupants is a seizure which triggers Fourth Amendment and art. I, sec. 11 protections. Therefore, based upon our conclusion that *Howard* failed to adequately address the constitutional implications of a vehicle stop on a passenger's right to freedom of movement, we now overrule the holding of *Howard* but adopt a rule

that will be consistently applied in all police-initiated vehicle stops.

■

By establishing this bright line rule, we recognize that all occupants of a vehicle possess a reasonable expectation of privacy, under the Fourth Amendment and art. I, sec. 11, to travel free of any unreasonable governmental intrusion. Here, where the police stopped the vehicle as part of a robbery investigation, everyone in the vehicle was equally seized. Once the police acted to seize someone in that vehicle, everyone in the vehicle acquired standing to challenge the lawfulness of the seizure. Therefore Harris, as a passenger in that vehicle, had standing to challenge the police officers' action.

## REASONABLENESS OF THE SEIZURE

■

By establishing a bright line rule that accords standing to all occupants of a vehicle in a police-initiated stop, we do not diminish the need for an objective, case-by-case analysis of the lawfulness of the seizure. We now turn to that analysis. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States*, — U.S. —, 116 S. Ct. at 1772. An automobile stop is thus subject to the constitutional imperative that it not be "unreasonable" under the circumstances. *Id.* Although we recognize that the seizure actually occurred when the police physically stopped the vehicle, in assessing the lawfulness of the stop the circuit court must look at the reasonableness of the seizure, as

well as the manner in which the stop was conducted. "The manner in which the seizure. . . [was] conducted is, of course as vital a part of the inquiry as whether [it was] warranted at all." *Terry*, 372 U.S. at 28.

Under both the Fourth Amendment and art. I, sec. 11 , "[l]aw enforcement officers may only infringe on an individual's interest to be free of a stop and detention if they have a suspicion grounded in specific, articulable facts and reasonable inferences from those facts, that the individual has committed a crime." *Guzy*, 139 Wis. 2d at 675 (citing *United States v. Hensley*, 469 U.S. 221, 226 (1985); *Wendricks v. State*, 72 Wis. 2d 717, 723, 242 N.W.2d 187 (1976)).[13] This is an objective test.

The test focuses on the reasonableness of the governmental intrusion. It "balances the nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion." *Guzy*, 139 Wis. 2d at 675-76; *Hensley*, 469 U.S. at 228. The governmental interest at stake here is the ability of law enforcement officers to make an investigative stop and seizure when a crime has been recently committed, thereby promoting the strong public interest in "solving crimes and bringing offenders to justice." *Guzy* at 676; *Hensley* at 229.

---

[13] The legislature has codified the constitutional standard established in *Terry* in Wis. Stat. § 968.24:

> **Temporary questioning without arrest.** After having identified himself or herself as a law enforcement officer, a law enforcement officer may stop a person in a public place for a reasonable period of time when the officer reasonably suspects that such a person is committing, is about to commit or has committed a crime, and may demand the name and address of the person and an explanation of the person's conduct. Such detention and temporary questioning shall be conducted in the vicinity of where the person was stopped.

The State need not establish that the police had reasonable, articulable suspicion to seize the particular defendant before the court, but only that the police possessed reasonable, articulable suspicion to seize someone in the vehicle. Once the State establishes that the police acted lawfully in stopping the vehicle based on information they had about anyone in the vehicle, the stop will be lawful as to anyone in the vehicle.[14]

Beyond reciting the bare language of the test for reasonableness, we have in the past weighed the conduct of the officers with reference to six factors itemized by Professor LaFave:

> (1) the particularity of the description of the offender or the vehicle in which he fled; (2) the size of the area in which the offender might be found, as indicated by such facts as the elapsed time since the crime occurred; (3) the number of persons about in that area; (4) the known or probable direction of the offender's flight; (5) observed activity by the particular person stopped; and (6) knowledge or suspicion that the person or vehicle stopped has been involved in other criminality of the type presently under investigation.

3 Wayne R. LaFave, *Search and Seizure*, sec. 9.3(d), at 461 (2d ed. 1987); *Guzy*, 139 Wis. 2d at 677.

Based on the facts of the record before us, we cannot conclude that the State has shown that the officers had reasonable, articulable suspicion to seize any of the occupants of the vehicle in which Harris was a passenger. We consider the events which led up to the seizure, and affirm the circuit court's finding that,

[14] This ruling does not foreclose an assessment of the lawfulness of an arrest, search, or detention subsequent to the actual stop.

viewed from the standpoint of an objectively reasonable police officer, the facts as adduced at the suppression hearing do not rise to the constitutional standard of reasonable, articulable suspicion.

On the night of June 8, 1994, around 11:30 p.m., Milwaukee police officers of the Armed Robbery Task Force were assigned to talk with a suspect wanted for an earlier armed robbery. One officer testified he did not recall when the bank robbery had occurred. The officers knew the address of the suspect. The officers had some description of the suspect: a black male with very short hair. The officers also had information as to the man's height and weight, as well as birth date.

As one unmarked squad car approached the given address, the officer saw a car parked in front of the suspect's house. While the officers were still traveling toward the parked vehicle, it pulled away from the curb and entered street traffic. At that point one officer told his partner to "cut it off," and the unmarked squad car pulled in front of, and almost perpendicular to, the vehicle in question. As one officer later testified, he suspected either that the robbery suspect was inside the automobile or he had just been dropped off by the automobile. Once the officers' car stopped, the officers got out and approached the vehicle in which Harris was riding. At least one approaching officer drew his gun. The officers did not know the identities of any of the occupants of the vehicle, nor could they determine more than very broad physical descriptions.

At least three officers were involved in the investigatory stop. As one officer approached the driver's door, he observed that there were a total of three persons in the vehicle. He further testified that although he could not tell who was in the vehicle, he could tell that they were black males.

The only specific and articulable facts of the record before us, namely that a vehicle pulled away from the curb close to the robbery suspect's address, and that the vehicle contained several black males, do not amount to reasonable, articulable suspicion. Nor does a consideration of all of the circumstances surrounding the incident add up to reasonable, articulable suspicion. There is nothing in the record to indicate the time or geographic interval between the actual robbery and this seizure. The physical description of the robbery suspect is general, and at the time the officers curbed the vehicle in question, they had little or no opportunity to match even the general physical descriptors to the occupants of the vehicle.[15]

From this record we know little or nothing about the armed robbery, the suspect or the information the police may have possessed about the suspect, the crime, or his getaway. None of the six LaFave factors were seriously addressed by the State in its presentation of the evidence at the suppression hearing. Pulling away from a parked position at a curb on a residential street, even if close to the suspect's address, is not reasonably suspicious behavior. Three men in a car on a residential street at 11:30 at night is not reasonably suspicious behavior. The circuit court correctly concluded that the record failed to establish that the police had a reasonable, articulable suspicion to make the stop.

---

[15] We observed in *Guzy* that the most important consideration concerning a physical description is whether the description is sufficiently unique to permit a reasonable degree of selectivity from the group of all potential suspects. *State v. Guzy*, 139 Wis. 2d 663, 680, 407 N.W. 2d 548 (1987) (citing 3 Wayne R. LaFave, *Search and Seizure*, sec. 9.3(d), at 464 (2d ed. 1987)).

There may well have been information in the hands of the Milwaukee police officers which might have given rise to a reasonable, articulable suspicion to stop the vehicle. Nonetheless, the State failed to meet its burden of proof by introducing a sufficient factual basis upon which a circuit court could find such a reasonable, articulable suspicion.

In considering all of the circumstances surrounding the seizure of the vehicle in which Harris was a passenger, we conclude that the officers did not possess reasonable, articulable suspicion to make the stop and effectively seize all within the vehicle. We hold that the seizure of Harris was without reasonable, articulable suspicion, and therefore violated his Fourth Amendment and art. I, sec. 11 rights. Because the seizure of Harris was illegal, the evidence of the packets of marijuana taken from his person was the "fruit" of an illegal seizure, and should have been suppressed.

*By the Court.*—The decision of the court of appeals is reversed and the case is remanded to the circuit court for further proceedings.