Tayr Kilaab AL GHASHIYAH (Kahn) a/k/a John A. Casteel, Plaintiff-Appellant,†

v.

Gary R. McCaughtry, Lynn Oestreich, Patricia Garro, Jane Doe, and Peter Roe, (Jail Guards Currently Unnamed and Unknown), Defendants-Respondents.

Court of Appeals

No. 98–3020. *Submitted on briefs June 4, 1999.—Decided September 23, 1999.*

(Also reported in 602 N.W.2d 307.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Walter W. Stern* of Union Grove.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Eileen W. Pray,* assistant attorney general, and *James E. Doyle,* attorney general.

Before Dykman, P.J., Vergeront and Deininger, JJ.

DEININGER, J.   John Casteel appeals an order that dismissed his claims against several prison officials for alleged violations of his civil rights under 42 U.S.C. § 1983.[1] Casteel's complaint alleges violations of the Fourth, Eighth and Fourteenth Amendments stemming from three strip searches to which he was subjected upon his return to segregation status from disciplinary hearings. Both Casteel and the defendants moved for summary judgment. The trial court granted the defendants' motion and dismissed Casteel's complaint. We affirm.

## BACKGROUND

This is the second time the present litigation has been before this court. Previously, we concluded that Casteel's state law claims were properly dismissed for failure to comply with § 893.82, STATS., and that his claims for injunctive and declaratory relief had become moot due to his transfer to a different institution from that of the alleged violations. We remanded, however, for further proceedings on Casteel's federal claims for

---

[1] The caption of the case in both this court and the circuit court indicates that Casteel is also known as Tayr Kilaab Al Ghashiyah (Kahn).

monetary damages. On remand, Casteel filed his "Second Amended Complaint," which named three individual defendants: the warden, security director and segregation unit supervisor at Waupun Correctional Institution (WCI). The complaint also alleged the existence of unknown correctional officers who had performed the strip searches of which Casteel complains.

Department of Corrections (DOC) rules provide that an inmate may be strip searched "[b]efore an inmate enters or leaves the segregation unit or changes statuses within the segregation unit of a correctional institution." *See* WIS. ADM. CODE § DOC 306.16(3)(b). The rules also specify that strip searches "may only be conducted in a clean and private place." *See* WIS. ADM. CODE § DOC 306.16(1)(b). Casteel alleges that the defendants had "intentionally and/or recklessly" conducted strip searches of his body on three dates in 1993 upon his return to segregation from hearing rooms to attend disciplinary hearings. On each occasion, Casteel claims that he was required to do the following during the strip search:

> to take off his clothes; raise his arms; open his mouth for inspection and remove his dentures, if any; spread his legs apart; lift his penis and scrotum to reveal that area directly between his legs; and spread his buttocks to reveal his anus. . . .

The searches, and the manner in which they were conducted, according to Casteel's complaint, were undertaken "pursuant to" WCI policies and DOC rules pertaining to strip searches, and "under color of" DOC regulations.

The complaint further alleges that during Casteel's movements to and from segregation for hearings,

he was shackled, restrained and kept constantly under guard, and thus, he had no "opportunity to secure contraband, weapons, or anything which would endanger himself, other inmates, or the institution itself." Casteel alleges that the three searches violated his rights guaranteed under the U. S. Constitution: (1) to be free from unreasonable searches and seizures under the Fourth Amendment; (2) to not be subjected to cruel and inhuman punishment under the Eighth Amendment; and (3) to due process and equal protection of the laws under the Fourteenth Amendment. Finally, Casteel asserts in his complaint that the DOC rules and WCI policies governing strip searches are unconstitutional as applied to him, and he seeks declaratory relief, compensatory and punitive damages, costs and reasonable attorney's fees.

Casteel filed a motion for summary judgment in which he generally repeated the claims in his complaint. He again maintained that he was strip searched "pursuant to" DOC rules and WCI policies, and that "the nature and type of strip search was in accordance with" the WCI policy for conducting strip searches. In the motion, Casteel narrowed his constitutional claims to violations of the Fourth Amendment, Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. He supported the motion with various documents and discovery materials, and with his affidavit. In the affidavit, Casteel avers that the strip searches occurred on each occasion upon his return to segregation following a hearing; that the "strip cages" in which they were conducted were not shielded or covered; that the searches were witnessed by more than one correctional officer, including "at least one female," as well as by other inmates; and that

he found each of the searches to be "humiliating, embarrassing, and degrading."

The defendants also moved for summary judgment, requesting dismissal of Casteel's complaint. In support, they filed affidavits of various WCI officials and employees, as well as numerous excerpts from discovery materials. These submissions generally describe the segregation facilities, hearing rooms and strip search rooms, as well as the procedures for escorting inmates to and from segregation. The defendants acknowledge the WCI policy and practice of conducting strip searches of inmates returning to segregation from hearing rooms, and that the procedure for the searches is essentially as Casteel described it.

The defendants' submissions indicate that inmates are placed in segregation only after they have demonstrated some type of threat to institution security (e.g., commission of battery or arson, possession of weapons, use of intoxicants, or another "major" conduct offense); that an inmate's segregation status often changes as the result of a disciplinary hearing; and that the types of property an inmate may possess varies among segregation statuses. The materials submitted by the defendants also establish that strip searches of segregation inmates have uncovered contraband such as pens, paper clips and matches.

A WCI "adjustment center" sergeant averred that the purpose of strip searching segregation inmates when they are returned to the segregation unit, or undergo a status change, is not to "punish or harass" them, but to "prevent contraband from entering the unit," both "for the safety of other inmates and staff" and "to ensure the security of the institution. . . ." The sergeant also described the opportunities that segregation inmates have for contact, albeit limited, with

592

general population inmates during transits to and from hearing rooms and while in adjacent waiting areas. Finally, the defendants' submissions show that on two of the three occasions that Casteel was strip searched, he had been convicted of a conduct offense and undergone a segregation status change prior to being strip searched.

At oral argument on the summary judgment motions, Casteel argued both that the strip searches to which he was subjected were not constitutionally justifiable, and that the manner in which they were performed violated his privacy rights, the latter largely because the searches were not conducted in a "private place" as required by DOC rule. The trial court concluded that the searches were reasonable because they were "necessary to maintain prison security," and that the manner in which they were conducted was not sufficiently raised in Casteel's complaint so as to constitute a separate ground for attacking the validity of the searches. Casteel appeals the ensuing judgment, which denied his motion for summary judgment, granted the defendants' motion, and dismissed the complaint.

## ANALYSIS

We review the granting and denial of motions for summary judgment de novo, applying the same methodology and standards as the trial court. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). If there are no disputed issues of material fact, summary judgment is proper where the moving party is entitled to judgment as a matter of law. *See id.* When both parties move for summary judgment and neither argues that factual disputes bar the

other's motion, the " 'practical effect is that the facts are stipulated and only issues of law are before us.' " *See Lucas v. Godfrey*, 161 Wis. 2d 51, 57, 467 N.W.2d 180, 183 (Ct. App. 1991) (citation omitted).

Casteel does not argue that the record on summary judgment produced disputed issues of material fact which would preclude the granting of summary judgment to one of the parties. Rather, he claims that the trial court erred in applying constitutional standards to the undisputed facts in the record. That is, Casteel maintains that under a correct legal interpretation, he is entitled to summary judgment on this record, one which would declare that the defendants violated his constitutional rights by subjecting him to strip searches at the times and in the manner that they did. He asks us to reverse the judgment and to remand for the purpose of a jury trial on the amount of damages he should recover, and for a determination of his recoverable attorney's fees.

Our first inquiry is whether Casteel's complaint properly pleads a claim or claims on which relief may be granted. *See Green Spring Farms*, 136 Wis. 2d at 315, 401 N.W.2d at 820. With respect to his challenge to the defendants' justification for subjecting him to strip searches on the three occasions he cites, we conclude that a claim is stated, and we discuss this claim further below. The same is not true, however, regarding the claim Casteel attempted to raise during argument on his motion for summary judgment, and which he now repeats on appeal: that the defendants violated his rights not only in the timing of the searches, but in the manner in which the searches were conducted.

Casteel asserts that under § 802.02, Stats.,[2] Wisconsin's "notice pleading" rule, his complaint sufficiently notified the defendants of his intent to challenge the failure of correctional officers to follow the DOC rule requiring strip searches to be conducted "in a private place." He points to allegations in his complaint which incorporate the DOC rule and WCI policy regarding strip searches, and to his allegation that the searches "were unnecessary intrusions into the plaintiff's privacy as an inmate in a maximum security institution, *and* said strip searches were not done in response to any definable or discernible harm, contrary to the Fourth and Fourteenth Amendments. . . ." Casteel cites *Schmerber v. California*, 384 U.S. 757 (1966), for the proposition that both the justification for a search and the manner in which it is conducted must be considered in assessing its reasonableness under constitutional norms.

---

[2] Section 802.02, Stats., provides, in relevant part, as follows:

(1) CONTENTS OF PLEADINGS. A pleading or supplemental pleading that sets forth a claim for relief, whether an original or amended claim, counterclaim, cross claim or 3rd-party claim, shall contain all of the following:

(a) A short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief.

(b) A demand for judgment for the relief the pleader seeks.

. . . .

(5) PLEADINGS TO BE CONCISE AND DIRECT; CONSISTENCY.

(a) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.

. . . .

(6) CONSTRUCTION OF PLEADINGS. All pleadings shall be so construed as to do substantial justice.

We agree that the degree of intrusiveness of a search is a factor that must be weighed when balancing the interest of an individual in avoiding unreasonable searches against the state's need to conduct a particular search. *See Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Thus, in this sense, the "manner" in which the searches were conducted was raised by the allegations pled in the complaint. The defendants, however, do not contest the fact that a strip search, performed in the manner prescribed by their policies, is highly intrusive. The trial court put it well when it commented:

> And if you've every seen a [visual] body cavity search, it is degrading. It's not only degrading to the person who has it done on them, it's degrading to the person who has to witness it or conduct it.

The Seventh Circuit has described "strip searches involving the visual inspection of the anal and genital areas as 'demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission. . . .' " *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1272 (7th Cir. 1983) (citation omitted).

Beyond the fact that strip searches are, by their very nature, highly intrusive, the manner in which the challenged searches were conducted is not otherwise raised in Casteel's complaint. We agree with the defendants and the trial court that any claim grounded on a failure by the defendants to adhere to the "private place" requirement of the DOC rule is not to be found in Casteel's complaint, nor for that matter, in his motion for summary judgment. We have summarized the allegations made in the complaint and the motion, and all assert that the searches were conducted "pursuant to" or "in accordance with" DOC rules and WCI policies.

Casteel's constitutional claims are clearly pled to be based upon his being subjected to intrusive searches at times when, according to him, it would have been physically impossible for him to have acquired and secreted contraband on his person.

Casteel acknowledges that, despite the liberal construction of complaints required under § 802.02, STATS., "the complaint must still show a justifiable claim for relief; it must still contain a statement of the general factual circumstances in support of the claim presented." Judicial Council Committee's Note, 1974, WIS. STAT. ANN. § 802.02(1) (West 1994). The complaint is devoid of allegations that prison officials did not follow the promulgated rules and policies for conducting strip searches. To the contrary, Casteel's explicit claim is that they did precisely that. The trial court properly denied Casteel's attempt to argue a claim on summary judgment based on the defendants' failure to conduct strip searches according to DOC rules and policies.[3]

We next consider whether the summary judgment record provides sufficient support for Casteel to recover on the claim he pled. Whether Casteel's constitutional rights were violated when he was subjected to strip searches upon returning to segregation from disciplinary hearings is a question of constitutional fact which we review de novo. *See State v. Cummings*, 199 Wis. 2d 721, 748, 546 N.W.2d 406, 416–17 (1996); *State v.*

---

[3] The defendants also argue that they cannot be held responsible for a failure by unnamed correctional officers to follow the applicable rules and policies. In view of our conclusion that the complaint fails to plead a separate claim for failure to conduct the strip searches in accordance with applicable rules and policies, we do not address this issue.

597

*Woods*, 144 Wis. 2d 710, 714, 424 N.W.2d 730, 731 (Ct. App. 1988). Questions of "constitutional fact" are not actually "facts" in themselves, but are questions which require the " 'application of constitutional principles to the facts as found. . . .' " *See State v. Mazur*, 90 Wis. 2d 293, 309, 280 N.W.2d 194, 201 (1979) (citation omitted). In this case, neither party argues that the material facts are in dispute, and we thus independently apply the appropriate constitutional standards to the record developed on summary judgment.

Casteel's opening brief does not separately discuss the constitutional provisions he believes were violated by the three strip searches.[4] That is, instead of separately analyzing the facts of record under the Fourth,

_____

[4] We also note that Casteel employs impassioned rhetoric in his brief, as well as several caustic references to the trial court and its decision. For example, Casteel invites this court to "determine whether or not it wishes to embrace this puerile ideology, not constitutional law embraced by the [trial court:] 'Inmates have no rights—end of discussion!' " Nowhere in the trial court's oral decision granting the defendants' motion and denying Casteel's does the trial court make such a statement, nor even imply that it believes that "inmates have no rights." At another point in his brief, Casteel posits that "[p]erhaps the Circuit Court would approve caning of inmates in the context of administrative segregation." Again, there is no justification in the record for such a statement.

We caution Casteel and his appellate counsel that this type of rhetoric and attacks on the trial court and its reasoning are not helpful to his case on appeal, especially when the issues before us call for the de novo review of questions of law. In addition, we note that attorneys are to "[a]bstain from making disparaging, demeaning or sarcastic remarks or comments" about judges. SCR 62.02(1)(c); *see also* comment to SCR 20:3.5 ("The advocate's function is to present evidence and argument so that the cause may be decided according to law. Refraining

598

Eighth and Fourteenth Amendments, Casteel simply argues that prisoners have minimal due process rights, and that the government must have "compelling reasons" to conduct intrusive strip searches of inmates. He also asserts that the searches conducted under DOC and WCI policies constituted "unjustified and disgraceful humiliation, punishment, and invasion of privacy." We conclude from these arguments that Casteel has abandoned any claim of an equal protection violation, but that he continues to assert that the strip searches violated (1) his right to substantive due process under the Fourteenth Amendment, and his rights to be free from (2) cruel and inhuman punishment and (3) unreasonable searches under the Eighth and Fourth Amendments, respectively. We will address the claims in that order.

A claim for relief which alleges a substantive due process violation, but which involves allegedly unlawful acts by governmental agents that are specifically addressed by other constitutional protections, should be analyzed under the more particular amendment rather than under "the more generalized notion of 'substantive due process'. . . ." *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citation omitted). Accordingly, we will not further discuss the Fourteenth Amendment issue, and we proceed instead to the more specific constitutional protections at issue in this case.

In order to prevail on his Eighth Amendment claim, Casteel must show that the defendants, by subjecting him to strip searches at the times and under the circumstances before us, caused "the 'unnecessary and wanton infliction of pain.' " *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citation omitted). That is, there is

from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants.").

a subjective component of Eighth Amendment analysis that separates it from the objective inquiry into "reasonableness" under the Fourth Amendment. *See, e.g., Hudson v. Palmer*, 468 U.S. 517, 525, 530 (1984) (citation omitted). Unless the record provides evidence that the defendants' implementation of DOC and WCI policies which authorize strip searches of inmates returning to segregation from disciplinary hearings constituted "calculated harassment unrelated to prison needs," Casteel's Eighth Amendment claim must fail. *See Johnson v. Phelan*, 69 F.3d 144, 147 (7th Cir. 1995) (citing *Hudson*, 468 U.S. at 530).

The record before us makes no such showing, and instead contains evidence that the strip searches in question were motivated by a legitimate concern for institutional security. In order to set aside the dismissal of Casteel's Eighth Amendment claim, we would have to ignore the evidence in the record regarding the security risks presented by inmates who are ordered into segregation, their opportunities for contact with other inmates during transport to and from hearings, and the past discoveries of contraband during strip searches conducted on segregation inmates. Casteel has provided nothing in the record from which we might infer that the defendants' stated concerns for institutional security were a pretext masking intentional or reckless conduct directed at inflicting pain on Casteel.

The Seventh Circuit has also concluded that the DOC's rule authorizing strip searches "whenever a prisoner moves into segregation or when time is tacked onto a prisoner's term in segregation" does not constitute an Eighth Amendment violation. *See Peckham v. Wisconsin Dep't of Corrections*, 141 F.3d 694, 695 (7th Cir. 1998). The court stated:

There is nothing alleged here which could lead a fact finder to conclude that any of the searches were for harassment purposes or any purposes that could reasonably be said to be punishment. The searches were for legitimate, identifiable purposes, and given the deference we accord to prison authorities to run their institutions, there is no way the Eighth Amendment, on these facts, could come to Peckham's defense.

*Id.* at 697. The same can be said on the present record regarding Casteel's Eighth Amendment claim.

What remains, then, is a consideration of Casteel's challenge to the strip searches on Fourth Amendment grounds. A threshold question presents itself—may Casteel, a prison inmate, raise a Fourth Amendment issue regarding these searches? While sometimes framed as an issue of standing, the inquiry is directed toward whether "the disputed [search] infringed on an interest . . . which the Fourth Amendment [is] designed to protect." *See State v. Harris*, 206 Wis. 2d 243, 251, 557 N.W.2d 245, 249 (1996). The issue is thus a matter of substantive Fourth Amendment law. *See State v. Dixon*, 177 Wis. 2d 461, 467, 501 N.W.2d 442, 445 (1993). Unless we conclude that the government conduct at issue constituted a search that is protected under the Fourth Amendment, we do not examine the reasonableness of that conduct. *See State v. Rewolinski*, 159 Wis. 2d 1, 12–13, 464 N.W.2d 401, 405 (1990).

A person who claims a Fourth Amendment violation must establish more than merely his or her subjective expectation of privacy:

The applicability of the Fourth Amendment turns on whether "the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by

> government action." . . . We must decide, in Justice Harlan's words, whether a prisoner's expectation of privacy in his prison cell is the kind of expectation that "society is prepared to recognize as 'reasonable.' "

*Hudson*, 468 U.S. at 525. We will assume that Casteel possesses a subjective expectation of privacy with respect to his unclothed body, and in particular, with respect to his genital and anal areas. These areas are sometimes referred to as the "private parts" of one's body precisely because most persons desire to exclude them from the view of others. The deciding inquiry thus becomes whether "society is prepared to recognize as reasonable" an expectation of bodily privacy on the part of a prison inmate in segregation status. We conclude that it is not.

The United States Supreme Court has concluded that an inmate cannot claim a legitimate or reasonable expectation of privacy in his cell:

> Notwithstanding our caution in approaching claims that the Fourth Amendment is inapplicable in a given context, we hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

*Hudson*, 468 U.S. at 525–26. The *Hudson* court did not speak to the objective legitimacy of an inmate's expectation of privacy with respect to his or her body, but the

Court's broad language suggests that it would reach a similar conclusion:

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that "[l]oss of freedom of choice and privacy are inherent incidents of confinement." *Bell v. Wolfish*, 441 U.S. at 537, 99 S. Ct. at 1873.

*Id.* at 527–28 (footnote omitted).

The Seventh Circuit has concluded that *Hudson* may be read as a declaration that prisoners retain no Fourth Amendment privacy rights—and that "monitoring of naked prisoners is not only permissible—wardens are entitled to take precautions against drugs and weapons (which can be passed through the alimentary canal or hidden in the rectal cavity and collected from a toilet bowl)—but also sometimes mandatory." *Johnson*, 69 F.3d at 146. Following this rationale, the Seventh Circuit chose to analyze the challenge to strip searches presented in *Peckham* under the Eighth, not the Fourth, Amendment. *See Peckham*, 141 F.3d at 697. The *Peckham* majority concluded that prison inmates enjoy some, unspecified measure of protection under the Fourth Amendment against unreasonable searches, but "hasten[ed] to add that given the considerable deference prison officials enjoy to run their institutions[,] it is difficult to conjure up too many real-life scenarios where prison strip searches of inmates could be said to be unreasonable

under the Fourth Amendment." *Id.* Judge Easterbrook, in a concurrence, was more direct:

> What *Hudson* and *Johnson* hold is that convicts lack any reasonable expectation of privacy that may be asserted against their custodian and that searches of cells and other places where contraband may be hidden, including the space under one's clothing, need not be justified by any particular quantum of suspicion. . . .

*Peckham*, 141 F.3d at 699.

Casteel argues that we should not follow the Seventh Circuit's lead in applying an Eighth Amendment analysis instead of Fourth Amendment standards to the strip searches at issue. His arguments acknowledge that strip searches of segregation inmates, upon their return from places where unsupervised contact with general population inmates or visitors might occur, would be deemed reasonable under the Supreme Court's holding in *Wolfish*.[5] He asks us, however, to declare that the risk that a segregation inmate will acquire contraband while traveling to and from a disciplinary hearing is negligible, thus rendering the strip searches to which he was subjected unreasonable. We decline to do so, concluding that the Fourth Amendment does not require that we attempt to ascertain the relative reasonableness of authorizing strip searches

---

[5] Casteel notes in his brief that the Supreme Court in *Bell v. Wolfish*, 441 U.S. 520, 558 (1979), concluded that strip searches of inmates following contact visits with outsiders were not unreasonable under the Fourth Amendment. He then points out that "[t]his is not a case where strip searches occur after [Casteel] mixed with the general prison population. This is not a situation involving a case where [Casteel] goes to the prison library or has a contact visit with a free member of the public."

upon an inmate's return to segregation from one type of activity as opposed to another.

■

Courts are required to accord prison officials a high degree of deference in devising and implementing policies to preserve the safety and security of correctional institutions, their staff and their inmates. *See Wolfish*, 441 U.S. at 546–47. Moreover, "society would insist that the prisoner's expectation of privacy *always yield* to what must be considered the paramount interest in institutional security." *Hudson*, 468 U.S. at 528 (emphasis added). We therefore conclude that the Seventh Circuit's treatment of inmate strip searches in *Johnson* and *Peckham* is persuasive. Accordingly, just as the Supreme Court has concluded with respect to prison cells, we conclude that a prison inmate in segregation status does not possess a reasonable expectation of privacy in his body that permits a Fourth Amendment challenge to the visual inspections to which Casteel was subjected. *See Hudson*, 468 U.S. at 522–28.[6]

We close by emphasizing that Casteel is not without constitutional rights when in segregation status. As both the Supreme Court and the Seventh Circuit

---

[6] In *Bell v. Wolfish*, 441 U.S. 520, 558 (1979), upon which Casteel relies, the Court did undertake a Fourth Amendment inquiry into the reasonableness of strip searches under the circumstances there presented. The Court began its inquiry, however, by "assuming for present purposes that inmates, both convicted prisoners and pretrial detainees, retain some Fourth Amendment rights upon commitment to a corrections facility." *Id.* As we have discussed above, in *Hudson v. Palmer*, 468 U.S. 517, 522–28 (1984), the Court addressed the issue of an inmate's "standing" to raise a Fourth Amendment issue, which it had avoided in *Wolfish*.

have explained, the Eighth Amendment is specifically aimed at protecting persons convicted of crimes from cruel and inhumane treatment while incarcerated. Strip searches may not be employed by prison officials for the purpose of punishing, harassing, humiliating or intimidating inmates, regardless of their classification or status within the institution. As we have discussed, however, the present record does not support a claim that the strip searches to which Casteel was subjected violated the Eighth Amendment.

## CONCLUSION

In summary, we conclude that the trial court did not err in denying Casteel's motion for summary judgment and in granting the defendants' motion. Casteel did not plead a claim that the strip searches were conducted in violation of DOC rules and WCI policies. His attack on the policy authorizing strip searches of segregation inmates returning to segregation from disciplinary hearings fails because the present record contains no evidence that the searches constituted cruel and inhuman punishment under the Eighth Amendment, which is the controlling constitutional provision on these facts.[7] We therefore affirm the appealed judgment.

*By the Court.*—Judgment affirmed.

---

[7] The defendants also argue that Casteel's complaint was properly dismissed on the basis of qualified immunity. Given our conclusion that Casteel's constitutional rights were not violated, we do not address whether these defendants would be entitled to qualified immunity from federal law claims for damages on the present record.