State of Wisconsin, Plaintiff-Respondent,
v.
Sabastian Ransom, Defendant-Appellant.
No. 03-2350-CR.
Court of Appeals of Wisconsin.
Opinion Filed: July 14, 2004.
Before Anderson, P.J., Brown and Snyder, JJ.
¶1 SNYDER, J.
Sabastian Ransom appeals from a judgment of conviction for possession with intent to deliver over forty grams of cocaine and an order denying his motion for sentence modification. He contends that the police stopped his vehicle unlawfully and therefore all evidence discovered in his vehicle should have been suppressed. He further argues that an error in his presentence investigation report justifies resentencing. We disagree with Ransom and affirm the judgment and order of the trial court.

FACTS
¶2 On March 1, 2002, City of Racine Police Officer Brent Hutchison received a call from a confidential informant. Hutchison, a drug investigator for the police department, had made five felony arrests and some misdemeanor arrests based on the information provided by this informant in the past. This time the informant told Hutchison that there was a person named Sabastian operating a white Cutlass Cierra, without a license plate, on the south side of Racine and heading towards the Total 24 gas station parking lot. The informant also told Hutchison that Sabastian had a large amount of crack cocaine and that there were two people in the vehicle.
¶3 Within an hour of receiving the call, Hutchison spotted a white Cierra driving towards the Total 24 gas station. He kept surveillance on the Cierra as it pulled into the Total 24 parking lot. When Hutchison arrived at Total 24 there were no occupants in the Cierra, but as he watched, two people got into the car and drove away. Hutchison then called for assistance in stopping the Cierra.
¶4 Officer Edward Morelli received the call for assistance and responded to help with the stop. He saw the white Cierra with Hutchison's vehicle following behind. Morelli stopped the Cierra and asked Ransom to exit the vehicle. Police officers found $1781 along with approximately seventy grams of cocaine in Ransom's clothing.
¶5 The State charged Ransom with possession with intent to deliver cocaine, greater than forty grams, in violation of WIS. STAT. § 961.41(1m)(cm)4 (2001-02).[1] Ransom moved for suppression of the physical evidence and the court denied the motion.
¶6 Ransom pled no contest to the charge and was convicted. The trial court sentenced him to two and one-half years in prison and fourteen and one-half years on extended supervision.
¶7 In a postconviction motion, Ransom sought sentence modification on the grounds that the court relied on inaccurate information in the PSI when imposing sentence. The court denied Ransom's motion.
¶8 Ransom now appeals his conviction, alleging the trial court erred when it denied his motion to suppress the physical evidence. He further alleges that the court's refusal to modify his sentence was error.

DISCUSSION
¶9 Ransom first challenges the stop of his vehicle based on a confidential informant's tip. He argues that the reliability of the informant was not adequately established by the State, and that without such reliability the police could not demonstrate reasonable suspicion for the stop. If the stop of Ransom's vehicle was illegal, the evidence seized during the stop should have been suppressed. See Wong Sun v. United States, 371 U.S. 471, 485 (1963) ("The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion.").
¶10 We will uphold a trial court's order denying the suppression of evidence unless the trial court's findings of fact are clearly erroneous; however, the legality of the police stop of the vehicle is a question of law to be reviewed de novo. State v. Harris, 206 Wis. 2d 243, 249-50, 557 N.W.2d 245 (1996). To execute a legal investigative stop, a police officer must reasonably suspect, in light of his or her experience, that some kind of criminal activity has taken or is taking place. State v. Richardson, 156 Wis. 2d 128, 139, 456 N.W.2d 830 (1990). The reasonable suspicion must be based on specific and articulable facts which, along with valid inferences from those facts, reasonably warrant the police intrusion. State v. Williams, 2002 WI App 306, ¶12, 258 Wis. 2d 395, 655 N.W.2d 462. Information from a confidential informant can be the basis for an investigative stop. State v. Rutzinski, 2001 WI 22, ¶17, 241 Wis. 2d 729, 623 N.W.2d 516. However, informants vary greatly in their reliability. Therefore, before an informant's tip can justify an investigative stop, the police must consider its reliability and content. Id.
¶11 The trial court, in considering Ransom's motion to suppress, looked at the police officer's assessment of the informant's reliability. The court took note of the relationship that Hutchison had with this informant and the past arrests resulting from the informant's tips. The court then turned to the six Harris factors to assess the content of the informant's tip. See Harris, 206 Wis. 2d at 260. First, the court considered the particularity of the description of the offender or the vehicle in which he fled. See id. Although Ransom was not described by Hutchison's informant, the vehicle's make and model, color, number of occupants, and lack of a license plate were provided. Next, the court looked at the informant's description of the size of the area in which the offender might be found, the number of persons in that area, and also the known or probable direction of the offender's flight. See id. The court found that the informant was relatively specific in this regard, telling the officer that the vehicle would be on the south side of Racine heading for the Total 24 gas station. Finally, the court considered what activity the police observed and what knowledge or suspicion the police held that the person or vehicle stopped had been involved in other criminality of the type presently under investigation. See id. The court found that Hutchison did not observe any separate activity that was suspicious or incriminating; however, the observations Hutchison did make verified the details provided by the informant.
¶12 Ransom argues that some of the facts relied upon by the trial court were not in Hutchison's written report, and therefore the officer may have created those facts at the suppression hearing to support his position that the informant's information was reliable and the investigative stop was legal. The written report failed to state what time the call came in, that the informant said the car would be on the south side of Racine and would pull into a Total 24 gas station, and that there would be more than one person in the car. At the hearing, the court acknowledged that it was "somewhat curious that details of that significance would have been omitted from an officer's report." The court went on to state that officers often leave details out of their written reports to protect the identity of an informant, and that the court was satisfied that Hutchison's testimony was credible. The credibility of witnesses and the weight to be given their testimony is for the trial court to decide, not the appellate court. State v. Baudhuin, 141 Wis. 2d 642, 647, 416 N.W.2d 60 (1987).
¶13 We will not set aside a trial court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2). Here, the court's findings are not erroneous because the record supports the findings and it demonstrates that the court applied the correct legal standard. See State v. Black, 2001 WI 31, ¶9, 242 Wis. 2d 126, 624 N.W.2d 363. Based on the historical facts provided by the trial court, we conclude that the initial investigative stop of Ransom's vehicle was based on specific and articulable facts to support reasonable suspicion and was therefore legal. Accordingly, the trial court's denial of Ransom's motion to suppress evidence obtained as a result of the stop is affirmed.
¶14 Next, Ransom challenges the trial court's refusal to modify his sentence. He argues that his right to due process was violated because he was not sentenced on the basis of true and correct information. See State v. Johnson, 158 Wis. 2d 458, 468, 463 N.W.2d 352 (Ct. App. 1990). A defendant who requests resentencing must show that specific information in the PSI was inaccurate and that the court actually relied upon the inaccurate information in crafting the sentence. See id.
¶15 It is undisputed that Ransom's PSI contained the following inaccurate information: on October 20, 1993, while Ransom was a juvenile, he committed the offense of first-degree sexual assault of a child and was placed on juvenile supervision. Having demonstrated that inaccurate information existed in the PSI, Ransom must now show that the sentencing court relied on the inaccuracy in crafting the sentence.
¶16 At the postconviction hearing, the trial court stated that it had placed very little weight on the PSI's report of a first-degree sexual assault. Nonetheless, a postconviction court's assertion of nonreliance is not dispositive. State v. Anderson, 222 Wis. 2d 403, 407-10, 588 N.W.2d 75 (Ct. App. 1998). We may independently review the record to determine the existence of any reliance. See id.
¶17 At sentencing, the court told Ransom that it would weigh three considerations to determine an appropriate sentence: Ransom's character as a person, the nature and seriousness of the offense, and the protection of the public. Regarding Ransom's character, the court referred to the PSI, stating:
When we look at your past pattern of behavior here as has been pointed out, you became involved with the criminal justice system at the age of 9 when you were a juvenile. You had a very lengthy juvenile record which consisted of a variety of offenses. Some property related in the theft, some behaviorally related in the form of disorderly conduct, some status related in terms of obstructing an officer. Some aggressive and assaultive offenses against other persons. Batteries, first degree sexual assault. Robbery. So it's not as if you've been involved in one type of form of behavior. And then you very quickly graduated to the adult system. You were waived into the adult court. And in the few years that you've been an adult you've accumulated an aggravated record consisting of three prior felonies, and two misdemeanors.
And significant is the fact that your first adult conviction was for possession of cocaine which had been an amendment down from possession with intent to deliver. Your last adult conviction was for possession of cocaine with intent to deliver. And that's what we're dealing with here today, possession with intent in a substantially greater amount.
¶18 At the postconviction hearing, the court further explained its reasoning:
Certainly the nature of the offense as one of first degree sexual assault is something that conceivably may have been relied upon to considerable degree by a court in sentencing. It has to be taken in the context that it was referred to though. For example if this were another offense of sexual assault that were charged here, the reflection that there had been a prior adjudication or a prior conviction for sexual assault would be very significant and consciously or subconsciously a court would be inclined to place significant weight on that since we would be looking at someone who appeared to present a pattern of sexually assaultive behavior....
Clearly in reviewing the sentencing transcript and I can say in all candor in looking at my own notes and my recollection the court placed very little weight on if any on that entry of first degree sexual assault in and of itself. The point that the court was trying to make which is something that it believes to be significant is where we have someone who engages in a variety of criminal behaviors. Property related, some crimes against persons, some crimes against status. That shows an attitude of disregard for the law in a variety of ways, and I think suggests that the person is a much more unpredictable criminal risk because they have a disregard for law and a willingness to violate it in many different ways.
....
Where this offense was cited here it was in the context of batteries, robberies, first degree sexual assault. The other offenses that were included in that category included six counts of battery to an inmate and the robbery charge. Those in and of themselves would have been adequate for the point the court was trying to make to show that there were assaultive, aggressive offenses committed against other persons.
¶19 We are convinced by our independent review of the record that the sentencing court did not rely to any significant degree on the inaccurate information in the PSI. The court's isolated reference to the sexual assault adjudication in the context of the other crimes, specifically the varied nature of Ransom's past crimes, demonstrates that the court paid minimal attention to the individual crime, but rather considered it as part and parcel with the other crimes committed by Ransom. Ransom argues that the reference to sexual assault in the PSI must have influenced the sentencing court because it "converted [Ransom's] criminal history from one based on property and drug related crimes into the realm of violent offenses." On the contrary, as the court stated, the battery and robbery convictions documented in the PSI would have been sufficient to show that Ransom had committed crimes against persons as part of his criminal past.

CONCLUSION
¶20 We conclude that the law enforcement officers had reasonable suspicion based on specific and articulable facts for the investigative stop of Ransom's vehicle. See Williams, 258 Wis. 2d 395, ¶12. Accordingly, the trial court's denial of Ransom's motion to suppress the evidence obtained as a result of the stop is affirmed. We further conclude that Ransom's PSI contained inaccurate information but that the sentencing court did not rely on the misinformation in crafting Ransom's sentence. The court's refusal to modify the sentence is therefore affirmed.
By the Court.  Judgment and order affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.