STATE of Wisconsin, Plaintiff-Respondent,

v.

Charles E. YOUNG, Defendant-Appellant.†

Court of Appeals

*No. 03–2968–CR. Oral argument October 12, 2004.—Decided
November 17, 2004.*

2004 WI App 227

(Also reported in 690 N.W.2d 866.)

† Petition to review granted 2-9-2005.

715

On behalf of the defendant-appellant, the cause was submitted on the briefs and oral argument of *Martha K. Askins*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and brief and oral argument by *Sandra L. Nowack*, assistant attorney general.

Before Brown, Nettesheim and Snyder, JJ.

¶ 1. NETTESHEIM, J.   Charles E. Young left the scene of a *Terry*[1] stop without submitting to the police show of authority. The police pursued and captured Young and later discovered THC in a coat that Young discarded during the capture. Because Young did not submit to the police show of authority, we hold that *California v. Hodari D.*, 499 U.S. 621 (1991), precludes Young's claim that he was illegally seized under the Fourth Amendment. Consequently, we uphold the trial court's order denying Young's motion to suppress and

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

we affirm the judgments of conviction for possession of THC, resisting an officer and obstructing an officer.

## BACKGROUND

¶ 2. The facts of this case are not in dispute. We take them from the evidence adduced at both the suppression hearing and the ensuing jury trial. On October 26, 2002, City of Kenosha Policer Officer David Alfredson was patrolling an area of the city where taverns and popular nightspots are located. Residents of the area had previously complained about "people leaving beer bottles in their yards, loud music, [people] being loud and boisterous going to and from the clubs." Alfredson was patrolling the area in light of these complaints.

¶ 3. As Alfredson was driving on 21st Avenue between 52nd Street and 53rd Street, he noticed a car bearing Illinois license plates parked on the east side of the avenue and occupied by about five people, including Young. Alfredson continued driving, stopping at one point to break up an argument outside a bar. About five to ten minutes later, Alfredson was again driving down 21st Avenue and noticed the same car still occupied by the same number of people. Alfredson decided to, in his words, "stop" the vehicle because:

> It was still occupied with five people in it. That length of time, they would have had time there to park and go out somewhere. They would have more than enough time to go out and do that, so it arose my suspicion for possible drinking or narcotics; so I'll stop and check it out.

¶ 4. Alfredson's decision to detain the vehicle and its occupants was consistent with his practice.

> As I'm patrolling the area specifically around the taverns, I'm looking for occupied vehicles occupied for a

717

length of time. I'll drive by and come back a little while later, a couple of minutes, five minutes. If it's still occupied, I'll stop and check the vehicle to see if people are drinking in the vehicle, narcotics, loud music, if they are playing the stereo too loud.

¶ 5.   Alfredson stopped his squad car in the roadway adjacent to a vehicle that was parked behind the suspect vehicle. He activated his flashing emergency lights and used his spot light to illuminate the vehicle.[2] Alfredson then observed Young exit the vehicle from the backseat. Alfredson exited his squad and ordered Young back into the vehicle. Young "turned and started walking away from the vehicle." Alfredson yelled to Young, "Get back in that car right now." Young again turned, looked at Alfredson, and then started running toward a nearby house. Alfredson took up pursuit and caught Young at the porch of the residence as Young was trying to gain entry. During the struggle, Young discarded his coat, throwing it toward the door of the residence. Eventually, Alfredson subdued and handcuffed Young, retrieved the coat, and discovered what he believed to be marijuana in a vial located in one of the coat pockets. Further testing confirmed Alfredson's belief.

¶ 6.   The State charged Young with possession of THC, resisting an officer and obstructing an officer. Young pled not guilty and filed a motion to suppress all the evidence resulting from Alfredson's pursuit and capture of him. Young argued as follows:   (1) he was illegally seized under the Fourth Amendment when Alfredson detained the vehicle and its occupants be-

_____

[2] In his testimony at the motion to suppress, Alfredson said he activated the "speed light" of his police squad. The State interprets this to mean the "spot light" of the vehicle. Young did not dispute this interpretation in his reply brief or at oral argument. We therefore adopt the State's interpretation.

cause Alfredson did not have the requisite reasonable suspicion under *Terry* as codified by Wɪs. Sᴛᴀᴛ. § 968.24 (2001–02);[3] (2) as a result, Young was free to depart the scene without further police intervention; and (3) consequently, all evidence obtained as a result of Alfredson's ensuing pursuit and capture of Young should be suppressed.

¶ 7. The trial court denied Young's motion, ruling that Alfredson had reasonable suspicion to detain the vehicle and its occupants. Therefore, the court reasoned that Alfredson was entitled to take up pursuit when Young exited the vehicle, failed to comply with Alfredson's orders to return to the vehicle, and then ran from the scene.

¶ 8. At the ensuing trial, a jury found Young guilty of all three counts. Young appeals from the judgments of conviction contending that the trial court erroneously denied his motion to suppress.

## DISCUSSION

¶ 9. Young's argument on appeal tracks the argument he made in the trial court: (1) the occupants of the vehicle were illegally seized within the meaning of the Fourth Amendment because Alfredson did not have reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1 (1968), as codified by Wɪs. Sᴛᴀᴛ. § 968.24; and (2) therefore, he was free to leave the scene and all evidence resulting from the ensuing pursuit should have been suppressed.

¶ 10. We will assume for purposes of argument that Alfredson did not have the requisite reasonable suspicion under Wɪs. Sᴛᴀᴛ. § 968.24 when he decided, in

---

[3] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

his words, to "stop" the vehicle.[4] However, our assumption does not avail Young because we conclude under *Hodari D.* that Young was not seized within the meaning of the Fourth Amendment because he did not submit to Alfredson's show of police authority. Until such a submission occurs, *Hodari D.* holds that a person is not seized for purposes of the Fourth Amendment and therefore the person will not be heard to assert a Fourth Amendment violation. *Hodari D.*, 499 U.S. at 629.

¶ 11.  In *Hodari D.*, the police were patrolling a high-crime area when they saw four or five youths, including Hodari, huddled around a car parked at a curb. *Id.* at 622. When the youths saw the police car, they fled on foot. *Id.* at 622–23. The car also departed at a high rate of speed. A police officer took up the chase of

---

[4] Although we do not decide this issue, we nonetheless harbor doubt that Alfredson had reasonable suspicion under Wis. Stat. § 968.24 to detain the vehicle or its occupants. We question whether, without more, the mere presence of five individuals in a parked car for a period of five to ten minutes at approximately midnight in an area of taverns and nightclubs constitutes reasonable suspicion that the occupants of the vehicle were committing, were about to commit, or had committed a crime or other violation. We take particular note that Alfredson did not testify to any observations suggesting that the occupants of the vehicle were engaging in any conduct related to the citizen complaints of debris and excessive noise. Nor did the occupants' conduct suggest any other criminal activity. As such, Alfredson's detention of the vehicle smacks more of an "unparticularized suspicion or hunch" than solid reasonable suspicion. *See State v. Waldner*, 206 Wis. 2d 51, 56, 556 N.W.2d 681 (1996). Although defending the trial court's ruling that reasonable suspicion existed, the State acknowledged at oral argument that its *Hodari D.* argument represented its stronger argument. *See California v. Hodari D.*, 499 U.S. 621 (1991).

Hodari. *Id.* at 623. Just before the officer captured him, Hodari tossed away what appeared to be a small rock. *Id.* The investigation established that the rock was crack cocaine. *Id.*

¶ 12.   Hodari moved to suppress the evidence. The State of California conceded that the police did not have "reasonable suspicion" under *Terry* to justify stopping Hodari. *Hodari D.*, 499 U.S. at 623 n.1. The issue before the United States Supreme Court was "whether, at the time he dropped the drugs, Hodari had been 'seized' within the meaning of the Fourth Amendment." *Id.* at 623.

¶ 13.   The Supreme Court began its discussion with the well-accepted principle that the Fourth Amendment's protection against unreasonable seizures includes seizure of the person. *Id.* at 624. However, the Court rejected the notion that the "slightest application of physical force, despite the arrestee's escape" constitutes a "continuing arrest during the period of fugitivity." *Id.* at 625 (emphasis omitted). The Court stated, "An arrest requires *either* physical force . . . *or,* where that is absent, *submission* to the assertion of authority." *Id.* at 626. Since Hodari had cast away the cocaine before he was apprehended and since he had not yielded to the police show of authority prior thereto, the Court concluded the cocaine was not the fruit of a seizure. *Id.* at 629. Thus, after *Hodari D.*, the focus is no longer on the legality of the police conduct; rather, the focus is on the conduct of the suspect in response to the police conduct.

¶ 14.   In so ruling, the Supreme Court rejected Hodari's argument based on the holding of *United States v. Mendenhall*, 446 U.S. 544, 554 (1980): "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circum-

stances surrounding the incident, a reasonable person would have believed that he was not free to leave." *See Hodari D.*, 499 U.S. at 627 (quoting *Mendenhall*). *Hodari D.* interpreted this language as follows: "[*Mendenhall*] says that a person has been seized 'only if,' not that he has been seized 'whenever'; it states a *necessary,* but not a *sufficient,* condition for seizure . . . ." *Hodari D.*, 499 U.S. at 628.[5]

¶ 15.   The Wisconsin Supreme Court adopted the *Hodari D.* standard in *State v. Kelsey C.R.*, 2001 WI 54, 243 Wis. 2d 422, 626 N.W.2d 777:

> Not all police-citizen encounters are seizures. *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (citing *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968)). A seizure occurs "when an officer, by means of physical force or a show of authority, restrains a person's liberty." *State v. Harris*, 206 Wis. 2d 243, 253, 557 N.W.2d 245 (1996) (citing *Terry*, 392 U.S. at 19, n.16). *Included in this test for a seizure is the requirement that when a police officer makes a show of authority to a citizen, the citizen yields to that show of authority. California v. Hodari D.*, 499 U.S. 621, 626 (1991).

> . . . .

> We agree with the State and will follow the *Hodari D.* standard for when a seizure occurs.

*Kelsey C.R.*, 243 Wis. 2d 422, ¶¶ 30, 33 (emphasis added).[6]

---

[5] The majority opinion in *Hodari D.* drew a sharp dissent, *see id.* at 629–48 (Stevens, J., dissenting), particularly regarding the majority's interpretation of this language from *United States v. Mendenhall*, 466 U.S. 544 (1980) *see Hodari D.*, 499 U.S. at 637–42.

[6] Although adopting *Hodari D.*, much of the supreme court's ruling justifying the police apprehension of the subject in *Kelsey C.R.* rested on different grounds—the community

¶ 16.  Here, as in *Hodari D.*, the police did not apply any physical force against Young prior to the actual capture. Also like *Hodari D.*, Young did not submit to the police show of authority when Alfredson detained the vehicle and later ordered Young to return to the vehicle. Instead, Young initially walked away from the scene and later fled by running after Alfredson ordered him to return to the vehicle. Given those facts, *Hodari D.* precludes Young from raising his Fourth Amendment claim that Alfredson illegally detained the vehicle under *Terry*.

¶ 17.  Young tries to distinguish *Hodari D.* on the basis of the degree of flight present in the two cases. In *Hodari D.*, the youths fled immediately upon seeing the police. Here, Young exited the vehicle, began to walk away, and did not run until after Alfredson ordered him back into the vehicle. But that subtle difference in the facts does not permit us to evade the core holding of *Hodari D.* that a suspect who does not submit to the show of police authority in an illegal *Terry* stop will not be heard to assert a Fourth Amendment violation or rewarded with an order suppressing evidence obtained as the result of such claimed violation.

¶ 18.  Although not argued by Young, we have also considered a further distinction between *Hodari D.* and this case. Hodari threw the cocaine away moments *before* the police captured him, whereas Young rid himself of the coat containing the drugs *during* the capture. However, we do not think the application of the Fourth Amendment should turn upon such temporal hairsplitting that allows for the admission of evidence

caretaker role of the police. *State v. Kelsey C.R.*, 2001 WI 54, 243 Wis. 2d 422, ¶¶ 34–37, 626 N.W.2d 777.

discarded at a certain moment, but requires suppression of evidence discarded a split second later. Instead, it is the core holding of *Hodari D.* that governs this case: unless the suspect has yielded to the show of police authority, thereby producing a seizure under the Fourth Amendment, the suspect will not be heard to argue for suppression of evidence as a remedy for an illegal *Terry* detention. Here, as in *Hodari D.*, Young failed to so yield, resulting in a pursuit that prompted him to discard the contraband. Under those circumstances, *Hodari D.* holds that the illegal police conduct under *Terry* does not bar the introduction of evidence resulting from the ensuing pursuit.

¶ 19. Although we uphold the trial court order denying Young's motion to suppress, we add that we are less than enthusiastic about the result that *Hodari D.* mandates in this case. The Supreme Court has recognized the right of a person to walk away from an encounter with a police officer that is not supported by probable cause or reasonable suspicion.

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. *The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and **may go on his way**. He may not be detained even momentarily without reasonable, objec-*

*tive grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds.*

*Florida v. Royer*, 460 U.S. 491, 497–98 (1983) (citations omitted; emphasis added).

¶ 20. However, after *Hodari D.*, this supposed right to "go on his way" becomes an empty right because it vests the police with the authority to pursue and detain anew. In short, the person is penalized for legal conduct while the police are rewarded for illegal conduct.

¶ 21. True, the suspect does not have the benefit of a judicial declaration regarding the validity of the police conduct at the moment of the encounter, but neither do the police. Moreover, the suspect also faces serious consequences if the decision to walk away proves flawed. Not only will any evidence subsequently discovered be admissible, but also, as evidenced by this case, the suspect could well face charges for obstructing an officer and resisting an officer.

¶ 22. However, *Hodari D.* saw it otherwise:

Street pursuits always place the public at some risk, and compliance with police orders to stop should therefore be encouraged. Only a few of those orders, we must presume, will be without adequate basis, and since the addressee has no ready means of identifying the deficient ones it almost invariably is the responsible course to comply. Unlawful orders will not be deterred, moreover, by sanctioning through the exclusionary rule those of them that are *not* obeyed.

*Hodari D.*, 499 U.S. at 627.

¶ 23. Remembering that Young was also convicted of resisting an officer and obstructing an officer pursuant to Wis. Stat. § 946.41(1), the *Hodari D.* approach also seems to fly in the face of established

725

Wisconsin law governing these two crimes. Both crimes require the State to prove as an element that the officer was "doing any act in an official capacity and with lawful authority." WIS. STAT. § 946.41. "Lawful authority" goes to the question of whether the officer's actions "are conducted in accordance with the law." *State v. Barrett*, 96 Wis. 2d 174, 181, 291 N.W.2d 498 (1980). *See also* WIS JI—CRIMINAL 1765. Therefore, if an officer is acting outside the law, such activity constitutes a defense to the charge of resisting or obstructing an officer. If a defendant's resistance to an officer is excused under those circumstances, we are left to wonder why a defendant may not rely on similar police conduct to assert a suppression of evidence claim based on a Fourth Amendment violation.[7]

¶ 24. We observe that *Hodari D.* has inspired much criticism.[8] *See* 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 9.3(d), at 124–32 (3d ed. 1996). One commentator has stated that the decision represents a manifestation of the Supreme Court's " 'surreal and Orwellian' view of personal security in contemporary America." *Id.* at 125 (citing Ronald J. Bacigal, *The Right of the People to be Secure,* 82 Ky. L.J. 145, 146 (1993)). LaFave also says that *Hodari D.* erroneously assumes that the common law determines the outer boundaries of the Fourth Amendment and that it fails to address other Supreme Court decisions more on point. 4 LAFAVE, *supra,* § 9.3(d), at 125–26. In addition, we have earlier

[7] Young does not raise a sufficiency of evidence argument as to whether Alfredson was acting with lawful authority. Instead, his argument focuses on the trial court's ruling denying his motion to suppress all the evidence garnered as a result of the illegal *Terry* detention.

[8] As of this writing, a Westlaw search reveals sixty-five cases that reflect a negative treatment of *Hodari D.*

noted that *Hodari D.* changes the focus of the inquiry as to whether a seizure has occurred. Under *Mendenhall*, we inquired whether, given the police conduct, a "reasonable person would have believed that he was not free to leave." *Mendenhall*, 446 U.S. at 554. Now, under *Hodari D.*, it is not the police conduct that governs the inquiry; rather it is the suspect's reaction to the police conduct. LaFave agrees: "[W]hat would otherwise be a groundless and thus illegal *Terry* seizure becomes conduct totally outside the Fourth Amendment merely because of the suspect's nonsubmission." 4 LaFave, *supra,* § 9.3(d), at 128. LaFave also expresses concern that instead of discouraging illegal police conduct, *Hodari D.* may tempt the police to act on mere hunches, thereby inducing flight. 4 LaFave, *supra,* § 9.3(d), at 130.[9]

¶ 25. Finally, the "fine tuning" that *Hodari D.* puts on the *Mendenhall* test for a seizure is problematic. *Mendenhall* said a person is seized "only if," in view of all the circumstances, a reasonable person would have believed that he or she was not free to leave. *Mendenhall*, 446 U.S. at 554. This test had been universally accepted as a proven and workable measure for determining when a seizure occurs. Contending that it does no violence to *Mendenhall*, *Hodari D.* says that "only if" does not mean "whenever." *Hodari D.*, 499 U.S. at 628. As a result, according to *Hodari D.*, *Mendenhall* states only a "necessary, but not a sufficient" condition for a seizure. *Hodari D.*, 499 U.S. at 628 (emphases

---

[9] The dissenters in *Hodari D.* expressed a related concern: "If carried to its logical conclusion, [the majority opinion] will encourage unlawful displays of force that will frighten countless innocent citizens into surrendering whatever privacy rights they may still have." *Hodari D.*, 499 U.S. at 646–47 (Stevens, J. dissenting).

omitted). That refinement of *Mendenhall* strikes us as strained and contrived, functionally overruling *Mendenhall* without saying so.

¶ 26. We rarely express our concerns about an opinion we are duty bound to follow, much less a United States Supreme Court opinion, but we question the wisdom and reasoning of *Hodari D.* for the reasons set forth above. We offer our thoughts in the hope that the Wisconsin Supreme Court, either in this case or a future case, might take a further look at *Hodari D.*[10]

## CONCLUSION

¶ 27. Because Young did not yield to the police show of authority at the time of the illegal *Terry* stop, Young is not entitled to complain about the ensuing police pursuit of him, which led to his resisting and obstructing of an officer and the discovery of the drug contraband. We therefore uphold the trial court's denial of Young's motion to suppress and affirm the judgments of conviction.

*By the Court.*—Judgments affirmed.

---

[10] We say this fully aware that the Wisconsin Supreme Court has held that "the standards and principles surrounding the Fourth Amendment are *generally* applicable to the construction of [the Wisconsin Constitution]." *State v. Phillips*, 218 Wis. 2d 180, 195, 577 N.W.2d 794 (1998) (emphasis added). We leave to the supreme court whether this general rule should continue to bind the Wisconsin Constitution to *Hodari D.*